FRANK B. KIMBALL ET AL., APPELLANTS, V. LINCOLN THEATRE CORPORATION ET AL., APPELLEES.

FILED DECEMBER 13, 1933. No. 28712.

*Chambers & Holland,* for appellants.

*Max V. Beghtol, Glen H. Foe* and *J. Lee Rankin, contra.*

Heard before Goss, C. J., Rose and Paine, JJ., and Carter and Redick, District Judges.

Carter, District Judge.

In this case, the appellants, as plaintiffs below, brought this action to recover for rents due under a lease on the property known as the Rialto Theatre in Lincoln, Nebraska, which said lease had been made with the Princess Amusement Company and subsequently assigned to the Lincoln Theatre Corporation, defendant and appellee herein. The plaintiffs alleged in their petition that they evicted the lessee on the 15th day June, 1932, the lessee being in default since March 1, 1932. The Lincoln Theatre Corporation claims in its answer that they were evicted on March 4, 1932, instead of June 15, 1932, as alleged in the petition.

The record discloses that on March 4, 1932, the plaintiffs commenced an action in the district court for Lancaster county, Nebraska, to recover the sum of $800, the amount due under the lease as rent in advance for the month of March, 1932, and subsequently on the same day caused an attachment to be issued and certain chattel property in the Rialto Theatre to be attached. The property thus attached consisted of 1,600 seats, one silver picture screen, one asbestos stage drop, 300 square yards of carpet (attached to floor), 8 electric ceiling fans, one ticket receiving box, 18 wall bracket lamps, 4 large ceiling lights and 3 dome lamps, all of which were pledged under the terms of the lease for the payment of the rent. After making the attachment the deputy sheriff demanded a receipt for the property, which was refused, but notwithstanding such refusal the property was left in the building. Two days later the deputy sheriff at the request of defendants' attorney went to said attorney's office and

received a key to the outer door of the theatre building. The record also discloses that the defendants retained keys to the inside office and to the projection room of the theatre, and, in addition thereto, there is the testimony of at least one witness that they also retained a key to the outer door of the theatre until June 23, 1932. On the trial of the cause in which the attachment was issued, it was dismissed by the court on the ground that it was prematurely brought, the plaintiffs having failed to demand the rent in writing 24 hours prior to starting suit as provided in the lease. The undisputed evidence is that the theatre was closed and not being operated at the time the attachment was levied. The defendants claim that these facts show a constructive eviction on the part of the plaintiffs and contend that they are thereby absolved from paying the rentals due under the lease after that date. After the evidence of all parties was submitted, the trial court directed the jury to return a verdict for the defendants and entered a judgment against the plaintiffs for the costs of the action. From the overruling of the motion for a new trial, the plaintiffs appeal.

The main question for this court to determine is whether the evidence, as a matter of law, shows a constructive eviction of the lessee Lincoln Theatre Corporation. This court has held that the acts relied upon to constitute a constructive eviction must amount to a disturbance of possession or prohibition of enjoyment. *Herpolsheimer v. Funke*, 1 Neb. (Unof.) 471. The established rule now is that any disturbance of the tenant's possession by the landlord or by some one under his authority, whereby the premises are rendered unfit for occupancy for the purposes for which they were demised or the tenant is deprived of the beneficial enjoyment of the premises, amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time. In this case the landlord sued for a month's rent four days after it was due and caused the attachment to be levied on the chattel property hereinbefore described. The property was left in the theatre building without molesta-

tion so far as the record shows. The deputy sheriff demanded a receipt for the property, but when it was not forthcoming he did not remove the property. The theatre was not operating when the attachment was levied, so that no interference which damaged the defendants has been shown by the record. The defendants contend that they surrendered the key to the building to the sheriff two days after the levy of the attachment, in support of their allegation that they were dispossessed of the entire building. The evidence shows that the attorney for the defendants called the deputy sheriff to his office and gave him one key to the outer door of the theatre building. This evidence is admissible to show the intention of the defendants to treat the acts of the plaintiffs as an eviction. When the deputy sheriff accepted the key from defendants' attorney, he could in no way bind the plaintiffs by so doing. One of the plaintiffs, Frank B. Kimball, testifies that on June 23, 1932, Charles Shire, local manager of the Lincoln Theatre Corporation, returned certain keys to him, among which was one key to the outer door of the theatre. Even if the possession of the keys were controlling, the evidence as to who had their possession is disputed. It appears that the south door, generally termed the front door, was the only entrance to the theatre that could be locked, all other entrances being barred from the inside. The defendants contend that on the delivery of the key by them to the deputy sheriff the eviction was complete. To this we cannot agree. In the case of *Webster Co. v. Grossman*, 33 S. Dak. 383, the court in discussing the matter of the surrender of keys in a case of this character say: "The delivery of keys of leased premises to a janitor, by lessees, upon their removal from the premises, and acceptance of keys by janitor, who was not shown to have had authority to terminate leases, or otherwise to bind lessors by his acts in the premises, does not establish a surrender of possession and acceptance thereof by lessors." In the case at bar, the delivery of the keys to the deputy sheriff cannot be considered as a surrender of possession, in the

absence of evidence to the effect that the deputy sheriff was the agent of the plaintffs and authorized to terminate leases for them. In the case of *In re Bradley,* 225 Fed. 307, it was held: "The tenant's surrender of the key of the premises on demand of a sheriff attaching his personal property could not be construed as a surrender of the premises, nor could the sheriff's acceptance of the key in the presence of the landlord's agent be construed as an acceptance of a surrender." It is clear therefore that the acceptance of the front door key by the deputy sheriff in this case cannot, as a matter of law at least, be construed as a surrender and acceptance.

The question then arises whether the act of levying the attachment as hereinbefore detailed could, as a matter of law, constitute a constructive eviction. In the case of *Wolf v. Ranck,* 161 Ia. 1, it was held: "The main question in the case is whether there was an eviction of the tenant by his landlord, and, following that, whether, if there was an eviction, it was waived by the parties in their subsequent relations to each other and to the property. The levy of a landlord's attachment upon property subject to the lien for rent, even when accompanied by taking possession of the leased premises by the officer acting under the writ, for the purpose of holding the attached property in his custody, does not constitute eviction." Again, quoting from the case of *In re Bradley,* hereinbefore cited, we find the following in the opinion: "In this case, all of the personal property on the premises was levied upon, so that the premises could not have been longer used by the bankrupt for the conduct of his business, since his entire stock was in the possession of the sheriff. If the sheriff had placed a bailee in possession of the personal property, as he had the undoubted right to do, the result would have been exactly the same to the tenant. In this case, the tenant was foreclosed from continuing business, even before the levy, by the filing of the petition in bankruptcy. There is no evidence of any declaration of the landlord or her agent, from which it could be inferred that the purpose of the attachment

was other than the collection of the rent. Indeed, it seems quite clear that there was no other purpose on her part than to secure her rent in response to the invitation of the tenant to do so. Nor did the sheriff, while the agent was present, do anything inconsistent with a purpose merely to take possession of the personal property on the premises against which the levy was directed. At most, it can only be said he selected a method of retaining custody of the property levied upon that was irregular, but which evinced no intent either upon his part or that of the agent to close up the premises for any other purpose than to keep safely the goods levied upon. Nothing was done by the sheriff that is not reasonably referable to a custody of the goods levied upon, and for this reason no inference can be drawn that there was an intent by what was done to oust the tenant. His acts might constitute a trespass, but could not amount to an eviction."

In the case at bar, the chattels were left in the theatre with the defendants as bailee. There is no evidence of any declaration on the part of plaintiffs of any intent other than to enforce the collection of the rent due. Nor did the deputy sheriff do anything in levying the attachment inconsistent with the taking of possession under the directions contained in the writ. It is true that plaintiffs did, after a refusal of defendants to so do, go upon the premises to drain the heating plant boiler and radiators so that they would not be damaged by freezing. This they had a right to do under the circumstances to prevent damage to their property. Can it be said that one who is pursuing a legal right, voluntarily granted in a lease of property, to enforce the collection of rent due thereunder, against a lessee who has, failed to pay, thereby places himself in such a position that he absolves the lessee from paying what he contracted to pay? We think not. Under the evidence in the record and the law herein cited, we are obliged to hold that the levy of the attachment, as a matter of law, did not of itself constitute a constructive eviction of the defendants and that the trial court erred

in sustaining the motion of the Lincoln Theatre Corporation for a directed verdict.

Objection is also made as to certain rulings of the trial court on offered testimony. There are clearly some acts of interference by the landlord with the tenant's enjoyment of the premises which do not amount to an eviction, but which may be either mere acts of trespass or eviction, according to the intention with which they are done. While a landlord must be presumed to intend the natural consequences of his conduct, all the circumstances must be taken into account in determining whether there has been an actual expulsion of the tenant with the intent and effect of depriving him of the enjoyment of the demised premises or a substantial part thereof. The intention of the landlord to evict or deprive the tenant of the enjoyment of the premises may be presumed from the character of the act, if the necessary result of it is to deprive the tenant of the beneficial enjoyment of the premises. And where the landlord actively interferes with the tenant's beneficial enjoyment of the demised premises, it is not for him to determine whether his act was intended as an eviction, but the effect of his act shall govern. Thus it would seem that all the facts and circumstances should be admitted in evidence that would have a bearing upon the intent of the parties. In this case the plaintiffs offered evidence to show that the theatre had been closed for a period of time prior to the levy of the attachment. The plaintiffs should have been permitted to show this.

Plaintiffs complain of the action of the trial court in directing a verdict in favor of the Paramount Publix Corporation. The evidence shows that officers of the Lincoln Theatre Corporation used letter-heads of the Paramount Publix Corporation in replying to letters addressed to them. The evidence also discloses that the Lincoln Theatre Corporation by one of its officers answered a telegram addressed to the Paramount Publix Corporation in New York. This evidence is insufficient to hold the Paramount Publix Corporation as an undisclosed principal.

The trial court was right in directing a verdict in its favor.

The judgment of the trial court directing a verdict in favor of the Lincoln Theatre Corporation is hereby reversed and the cause is remanded.

REVERSED.