[Civ. No. 16014. Second Dist., Div. Three. Apr. 28, 1948.]

JANET TOOKE, Respondent, v. GEORGE S. ALLEN, Appellant.

Joseph D. Taylor and Paul Taylor for Appellant.

Frank C. Weller and Thomas S. Tobin for Respondent.

SHINN, Acting P. J.—On March 1, 1942, plaintiff was and for some six years had been a tenant in an apartment house in Los Angeles known as the Huntley Apartments. For several years her rent had been $22.50 per month. Defendant George S. Allen acquired the property and accepted from plaintiff and gave his receipt for $22.50 as rent for the month of March. Thereafter, a dispute arose between the parties as to whether plaintiff should pay $22.50 or $30 per month for her apartment. No legal notice was given by defendant of an increase in the rent to $30. The dispute found its way to the O. P. A. office of rent control, but the ramifications of the controversy need not be recounted here, since the trial court found that plaintiff's rent was $22.50 per month, and it is conceded on the appeal that there was sufficient evidence to support this finding. It was alleged in the third amended complaint that defendant engaged in a persistent and protracted scheme and effort to force plaintiff to vacate her apartment, which she finally did, but not until after she had instituted her present action in June, 1945. The action is for damages occasioned by a continuous course of persecution and abuse which prevented plaintiff from enjoying the peaceful occupation of her apartment, which was her home. In a court trial plaintiff was awarded $2,500 actual damages, and $2,500 punitive damages, and defendant appeals.

The findings as to defendant's conduct followed generally the allegations of the complaint. The court found that the defendant, George S. Allen, "together with certain of his

employees, acting under his direction, entered upon and carried out a campaign of annoyance designed to force the plaintiff to vacate said apartment by interfering repeatedly with and violating her right to the peaceable possession thereof, and in pursuance of that design they did interfere with and destroy her peaceful possession of said premises''; that plaintiff is a woman of intelligence and refined sensibilities, that she has gained her livelihood by literary and artistic activities; that defendant made threats that he would violate plaintiff's right of peaceful possession, that she lived under fear of the execution of said threats; that in order to safeguard her belongings she had a special lock put on her door; that defendant broke the lock and key, entered plaintiff's apartment, removed a typewriter, clothing, wearing apparel and other personal belongings and keepsakes, scattered her papers and unfinished manuscripts on the floor; caused the hot.water in her apartment to be reduced in quantity; caused the gas in her apartment to be shut off entirely several times, thus preventing her cooking; discontinued telephone service through the apartment house switchboard, which plaintiff had theretofore enjoyed in accordance with the usual practice in such cases, thereby preventing plaintiff from accepting incoming calls from prospective employers who desired her services as a retoucher and finisher of photographic portraits; that because of such interference and by reason of plaintiff's nervous and distraught condition, plaintiff's income was substantially reduced. It was also found that on at least two occasions with the design aforesaid, defendant forcibly entered plaintiff's apartment and assaulted her, by pushing her out of the apartment on one occasion and threatening her with death or serious bodily harm, thereby putting her in a condition of terror. It was further found that during the interval in question defendant avoided a judicial determination of his right to raise the rent of the apartment or evict plaintiff and th'.. his conduct as stated was oppressive, willful and malicious. It was found that at the time defendant took possession of plaintiff's clothing and other personal belongings plaintiff was not indebted to defendant for rent but that at the time of the trial said articles were still in defendant's possession and withheld from plaintiff. It was further found that all of the acts constituting defendant's conduct as related in the findings were committed within three years immediately preceding the commencement of the action. It was found that as a result of defendant's acts plaintiff was humiliated, incon-

venienced, distraught and terrorized, in addition to suffering direct pecuniary loss by reason of her inability to work under the conditions created by the defendant, "and that by defendant's interference with and destruction of her peaceful possession of the aforesaid premises, of which she was a lawful tenant, all as herein found, she was damaged in the sum of $2,500." Defendant demurred to the complaint generally; also upon the ground that several causes of action were improperly united and that those which could be united were not separately stated, to wit: a cause of action for the unlawful detention of personal property, a cause of action for personal injuries, a cause of action for injury to property, a cause of action for eviction, and a cause of action for nuisance.

■ Defendant held to this position throughout the trial and insists here that plaintiff is seeking to recover upon many causes of action founded on separate torts. The trial judge rejected this theory and construed the complaint as stating a single cause of action arising out of a continuous course of conduct on the part of defendant, intended and calculated to disturb and destroy plaintiff's peaceful possession of her dwelling place. In a memorandum stating the grounds of his decision he said: "Defendant's counsel have argued that those (the above enumerated) incidents ought to be isolated and that each, if it occurred, ought to be dealt with as an independent act or omission or event. To do that would be to ignore the reality that an occasional annoyance, trespass or other wrong is quite a different matter from the threat and execution of a plan and series of interferences, under which the victim of the aggression is compelled to live in continual apprehension and by which the injurious effect of each incident in the plan increases in arithmetical or possibly geometric progression." Defendant builds an elaborate argument upon the assertion, "Successive separate torts can not be transmuted into a greater tort whether that tort be called a constructive eviction or the invasion of a possessory right." He separates the many acts of misconduct into classes, namely, (1) defendant's failure to furnish adequate telephone, gas, water, and electric service to plaintiff's apartment, (2) the taking and detention of plaintiff's clothing and other personal belongings, and (3) locking plaintiff out and invading her apartment and committing the assaults as above described. As to the first class of wrongs, he attacks the sufficiency of the evidence to prove that plaintiff was deprived of any of the services and maintains that the deprivation of these services,

if proved, was nothing more than a breach of contract. Much of his argument on the facts is addressed to the weight of the evidence, rather than to its sufficiency, and requires no answer. A careful review of the evidence satisfies us that the findings with respect to the deprivation of these utility services have support in the evidence. Defendant's legal point in this connection is that plaintiff should have pleaded in each instance a contract for the furnishing of these several utility services and should have sought damages for each breach which she was able to prove. In the development of this theory he points out that plaintiff proved no contract for telephone service and although he concedes that such service was customarily furnished in the apartment house, he appears to claim that this was a mere favor that could be discontinued at any time. In similar fashion he waves aside the failure to provide plaintiff with hot water, for after all, he says, what difference does it make if plaintiff was required to take cold baths and was unable to do her kitchen work. Also the shutting off of the gas was a trivial matter, since plaintiff's neighbors came to her rescue and allowed her to use their kitchens. The argument leads to the conclusion that these minor inconveniences which plaintiff was caused to suffer were too inconsequential to engage the time of the court, and that therefore plaintiff suffered no recoverable damage. As to the taking of plaintiff's clothing and other property under a claim of lien for unpaid rent, he does not attack the court's finding that at the time the property was taken no rent was due, but he says that the articles were produced by defendant at the trial and did not appear to have been damaged; that plaintiff suffered no injury through the taking of her clothing, and in addition, the statute had run against a cause of action for taking or injury to personal property, and there could be no recovery for that reason. Plaintiff placed a special lock on her door and the lock and key were broken by defendant or his employees. This, also, was a trivial matter according to the defendant, and did not constitute an eviction. Also, the entries into plaintiff's apartment and the commotion created by defendant upon such occasions, it is contended, had no tendency to interfere with plaintiff's peaceful possession of the premises. By this painstaking procedure he arrives at the conclusion that if plaintiff had split her action into a multitude of separate causes of action she would have been unable to sustain a recovery under any one of them, and defendant

would have been held guiltless of any wrongdoing whatever. In this manner he would have the court obliterate the gravamen of his offense, namely, the pursuit of a purpose of unrelenting persecution by petty annoyances, the cumulative effect of which would be to render plaintiff emotionally disturbed to the point where further occupancy of the apartment would be intolerable. Carried to its logical conclusion defendant's theory would require several actions, and a separate cause of action for each annoying incident occurring on a separate day. It is an untenable theory, as we shall presently demonstrate.

One of defendant's principal contentions is that plaintiff was awarded damages, included in the total sum, on account of the assaults mentioned in the findings. These acts, he says, were not pleaded, they took place more than a year prior to the filing of the complaint and any recovery thereon was barred by the statute of limitations. The record does not bear out the assertion that the court considered the described assaults as a basis for the award of damages. Evidence of the occurrences came in incidentally, as a part of plaintiff's answer to a question as to why she left the apartment. In denying a motion to strike the evidence, the court expressly limited the purpose for which it was admitted, namely, as evidence tending in some degree to prove plaintiff's state of mind occasioned by defendant's conduct. The evidence was admissible upon that ground and for the additional reason that it had relevancy to the question of malice.

Plaintiff's cause of action was not for injuries to either person or property in a strict sense, but for interference with her right of peaceful possession. Interference with a property right is of the essence of such a cause of action and interference with personal rights would not be an unusual consequence, but proof of one or the other, or both would not change the basic nature of the cause of action. It is difficult to see how the cause of action could be established without such proof. Defendant's course of persecution was a continuing offense, and allegedly malicious. Any evidence which tended to prove the humiliating and terrorizing effect of his conduct or the motive for it was relevant.

Plaintiff's right to recover damages for deprivation of peaceful possession occasioned by a succession of defendant's wrongful acts is supported by established principles. ''The actor is liable in an action for damages for a non-

trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (i) intentional and unreasonable; or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct." (Rest. Torts, § 822.) The principle is most frequently applied in nuisance cases (*Griffin* v. *Northridge,* 67 Cal.App.2d 69 [153 P.2d 800]; *Vowinckel* v. *N. Clark & Sons,* 216 Cal. 156 [13 P.2d 733]; *Strong* v. *Sullivan,* 180 Cal. 331 [181 P. 59, 4 A.L.R. 343]; *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168 [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A.N.S. 183]), but has equal application to nonnuisance cases. (*Jones* v. *Kelly,* 208 Cal. 251, 255 [280 P. 942]; *McIvor* v. *Mercer-Fraser Co.,* 76 Cal.App.2d 247 [172 P.2d 758]; *Smith* v. *Weber,* 70 S.D. 232 [16 N.W.2d 537]; *Winchester* v. *O'Brien,* 266 Mass. 33 [164 N.E. 807, 64 A.L.R. 895].)

■ A further criticism of the judgment is that the damages allowed included an award to compensate plaintiff for the loss of business earnings. It is contended that the complaint and the findings should have specified the amount of damages sustained on that score. The complaint alleged that plaintiff had been rendered unable to successfully pursue her occupation of writer and illustrator for a period of approximately three years, had been unable to sleep at night, and had been, for the past three years, extremely nervous, upset and distraught, all to her damage in the sum of $4,000. The court found, "that as a result of said annoyance of the plaintiff by the defendant, his agents, servants and employees, and as a result of her incoming telephone calls being blocked and diverted, and as a result of the nervous and distraught condition of the plaintiff by reason of said annoyance, plaintiff's income was substantially reduced; that photographers who wished to employ her were unable to establish contact with her by telephone and discontinued availing themselves of her professional services by reason of their inability to contact her by telephone to give her work." And further, "that as a result of the acts of the defendant, the plaintiff was humiliated, inconvenienced, distraught, and terrorized in addition to suffering direct pecuniary loss by reason of her inability to work under the conditions created by the defendant

his agents, servants and employees, during her occupancy of the Huntley Apartments in the years of 1943, 1944 and 1945, and that by defendant's interference with and destruction of her peaceful possession of the aforesaid premises, of which she was a lawful tenant, all as herein found, she was damaged in the sum of $2,500.''

Loss of earnings would not be a consequence of deprivation of peaceful possession of real property to be anticipated in the usual course of things, and should therefore be pleaded by way of special damage. Undoubtedly it is a better practice for the court to find specifically the amount of special damage sustained by a plaintiff, but the failure to do so is not necessarily fatal to the judgment. It is not every case in which the amount of special damage can be ascertained with certainty and the present case is one in which the court was required to approximate the amount by the best method provided by the evidence. The fact that such damages are incapable of exact ascertainment does not bar the plaintiff from receiving an award judicially determined from the facts in evidence. Plaintiff made an issue of the damages sustained by reason of her loss of business. It was not necessary under the circumstances that she specify the amount claimed as a business loss. While defendant's demurrer specified uncertainty in that it did not appear from the complaint whether the damages were claimed on account of injury to property or to person, it did not urge uncertainty for failure to specify the amount claimed as a business loss. Since the issue was presented and fully tried, no disadvantage or detriment resulted to defendant by reason of the failure of the complaint to segregate the claims for damages. However, we believe that defendant had a right to have separate findings as to the amount of damage sustained as a result of business losses and those awarded on account of the humiliation, inconvenience and mental distress suffered by plaintiff. But we do not find in the record, nor is it suggested, that defendant objected to plaintiff's proposed findings upon that ground before the findings were signed, nor on motion for new trial. The objection urged now is one that could have been obviated on motion for a new trial. When section 634, Code of Civil Procedure, was amended in 1913 to require the service of findings, and again in 1933 to require that they be not signed prior to five days after service, the purpose was to permit of a procedure for the pointing out of defects in the proposed findings, including objections that they were

uncertain or not sufficiently specific. The situation presented to us here is one in which we think the objection should be deemed to have been waived by the failure to urge it in the trial court. (*Del Ruth* v. *Del Ruth*, 75 Cal.App.2d 638, 644-5 [171 P.2d 34].) Since the record is silent on the subject, it will be deemed to have been waived. We must presume the record includes all matters material to a determination of all points on appeal. (Rules on Appeal, rule 52.)

But aside from the matter of waiver, the point that the findings as to damages are not sufficiently specific would not in the present case justify a reversal of the judgment. There was ample evidence that plaintiff had a profitable business as a retoucher of photographs and suffered substantial business losses through the inability of her employers to reach her by telephone when they had work for her to do. The record shows that the issues were exhaustively tried and that the trial court gave careful consideration to the matter of compensatory damages. Considering the indignities heaped upon plaintiff by the vicious and malignant conduct of the defendant, the award of damages was clearly not only a carefully weighed judicial determination of that issue but a conservative one as well. Any error in this regard would in any event be harmless, for the evidence was ample to justify the full amount of the award without reference to loss of earnings. (See *McIvor* v. *Mercer-Fraser Co.*, 76 Cal.App.2d 247, 254 [172 P.2d 758].)

Little need be said as to the award of exemplary damages beyond the statement that the findings hereinabove quoted are amply supported by the evidence. Defendant, it is true, categorically denied plaintiff's accusations. He posed as a most considerate and indulgent landlord. Some of his tenants who had not suffered from his abuse gave him a good character. But it appears that there are times when his virtues are overcome by his wrath toward tenants of his cheaper apartments. (See *Sanders* v. *Allen*, 83 Cal.App.2d 362 [188 P.2d 760].) He has been assessed compensatory and exemplary damages before this for the ruthless oppression of another of his tenants, a refined elderly lady whom he falsely accused of being delinquent in the payment of a month's rent, and whom he drove from her apartment by malicious harassment. (*Butler* v. *Allen*, 73 Cal.App.2d 866 [167 P.2d 488].)

The judgment is a just one and we think there is no reason why defendant should not be required to pay it.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

A petition for a rehearing was denied May 21, 1948, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1948. Schauer, J., voted for a hearing.