[Civ. No. 19954. Second Dist., Div. Two. July 20, 1954.]

KENNETH L. PIERCE, Appellant, v. CARRIE G. NASH
et al., Defendants; GAYLORD BURKE et al., Re-
spondents.

608

Glenn R. Watson and Robert G. Beverly for Appellant.

Paul J. Otto and Victor Bewley for Respondents.

FOX, J.—This is an appeal by plaintiff from an order granting defendants Gaylord Burke and Robert P. Burke a new trial after judgment for plaintiff. The matter was tried by the court without a jury. Defendants did not take a cross-appeal from the judgment.

The action is for damages for constructive eviction of plaintiff, lessee of the premises here involved. The complaint recites that on April 26, 1948, Harry F. Burke leased these premises, by a writing, for a term of five years, to one R. Crawford. The defendants are alleged to be the successors in interest of Harry F. Burke. On about February 21, 1949, Crawford assigned this lease to the plaintiff. It was alleged that at the time of the execution of the lease and at all subsequent times Crawford and plaintiff were engaged in the business of operating a pool hall or "snooker parlor"; that the nature of this business required pool tables to be located at intervals sufficient to provide space for plaintiff's customers to move around them without hindrance; that defendants were aware of the characteristics of Crawford's business when the lease was executed and that the lease was made to Crawford for the purpose of carrying on such a business; that on March 13, 1951, defendant commenced erecting supporting posts at intervals throughout the leased premises against

plaintiff's wishes and despite his assertion to them that such action would put him "out of business"; that the presence of the posts made the premises unfit and unsuitable for occupancy as a "snooker parlor" in accordance with the purpose for which they were rented; that plaintiff was forced to abandon and surrender possession of the premises to defendants on March 27, 1951, and that plaintiff suffered damages as a result of his eviction by defendants.

By way of affirmative defense, the answer alleged that the building here involved, including the premises leased to plaintiff, had become unsafe and its condition was below the minimum safety standards required by the Building Code of the city of Los Angeles; that on about January 8, 1951, the defendants received a notification from the Department of Building and Safety to comply in the following manner with the requirements of the Los Angeles Municipal Code: "Provide adequate support for second floor where solid plastered partitions were removed"; and that only the repairs and alterations required by law were made.

The court found generally in accord with the allegations of the complaint. The findings stated in part: that after receiving the notice from the city to provide adequate support, defendants filed, on February 7, 1951, an application for a building permit, coupled with plans for the performance of the corrective work by strengthening the existing beams by adding steel U-plates and without the installation of any additional upright supports or parts; that these plans were approved and defendants were granted permission to complete the work as therein provided; that on February 27, 1951, defendants filed another application for a permit, together with plans for the installation of additional upright parts on the premises, in lieu of the work provided for in the prior application; that this second plan was likewise approved and permission to proceed granted; that the supporting posts which defendants thereafter installed on the leased premises from floor to ceiling were so placed that four of the six pool tables could not be used due to inadequate space for movement around them, rendering the premises unsuitable for use as a pool hall and depriving plaintiff of the enjoyment of a substantial portion of the premises; that plaintiff vacated the premises and surrendered possession to defendants, which were thereafter used by defendant Gaylord Burke for the operation of his cleaning business; "that defendants could have provided adequate support for the second

floor by a means other than the installation of additional posts . . . and in a manner that would not interfere with plaintiffs business or render the premises unfit or unsuitable for pool hall purposes or deprive plaintiff of the beneficial enjoyment of said premises''; that defendants knew another means of support was practicable prior to their installation of the posts; that ''[I]t is not true that the posts installed by defendants were required by law to be so installed.''

Upon these findings, the court concluded that defendants constructively evicted plaintiff from the premises and awarded damages of $4,375.

Defendants' motion for a new trial specified all of the grounds enumerated in section 657 of the Code of Civil Procedure with the exception of subdivision (2) thereof, which was inapplicable as the matter was not tried before a jury. The order granting the new trial was general and did not designate the ground on which it was granted. It must, therefore, be presumed that it was not based on the ground of the insufficiency of the evidence to sustain the decision (Code Civ. Proc., § 657; *Renfer* v. *Skaggs,* 96 Cal.App.2d 380, 385 [215 P.2d 487]). ▉ We are thus precluded from considering the insufficiency of the evidence to support the judgment unless the evidence was without conflict and insufficient as a matter of law. (*Adams* v. *American President Lines,* 23 Cal.2d 681, 683 [146 P.2d 1]; *Carvalho* v. *Lusardi,* 114 Cal.App.2d 733, 734 [251 P.2d 37].) This point will be discussed below. ▉ Furthermore, the grounds set forth in Code of Civil Procedure section 657, subdivisions (1) and (3), namely, irregularity of the proceedings and accident or surprise, must be supported by affidavits. (Code Civ. Proc., § 658.) Since no affidavits were filed in support of either of these grounds, it must be likewise presumed that the order was not founded thereon. (*Gardner* v. *American Brake etc. Co.,* 24 Cal.2d 686, 690-691 [151 P.2d 122]; *Breeze* v. *Southern Petro T. L. Co.,* 5 Cal.App.2d·507, 510 [43 P.2d 584].) There is thus left for consideration the following grounds: (1) That the decision is against law; (2) newly discovered evidence; (3) excessive damages; and (4) errors in law occurring at the trial.

▉ Upon an appeal from an order granting a new trial, all intendments favor the order as against the verdict. (*Abercrombie* v. *Thomsen,* 59 Cal.App.2d 331 [138 P.2d 701].) ▉▉ The law is clear that an order granting a new trial will only be disturbed on appeal where there is a manifest abuse of discretion, and that when such an order

is in general terms it will be affirmed if it could have been properly granted upon any of the grounds upon which the motion was predicated. (*Scott* v. *Times-Mirror Co.*, 178 Cal. 688 [174 P. 312]; *Breeze* v. *Southern Petro T. L. Co., supra.*) In conformity with *Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 361 [170 P.2d 465], we have therefore reviewed the entire record on which the order was based to discover whether such error appears as would justify the trial court in making its order upon any of the grounds last stated. We have found no error, and are satisfied that the order granting a new trial cannot be upheld.

As is apparent from defendants' brief and their memorandum of points and authorities filed in support of their motion, the most important point argued upon the motion for a new trial was that the decision is against the law. They assert the evidence fails to show any bad faith on their part, and that they only used wooden posts in place of a steel U-beam because steel was unavailable for civilian use because of the Korean hostilities. Hence defendants contend the judgment in the instant case is against law where damages are awarded for a construction eviction when the issue of their bad faith is absence from the pleadings, evidence, findings of fact and conclusions of law. ■ Their argument proceeds from the premise that even in a case such as is here presented, where the positive acts of the lessor have disturbed the tenant's possession and have so seriously impaired his beneficial enjoyment of the premises that he is compelled to quit them, the tenant may not recover damages without an affirmative showing of bad faith on the lessor's part. But that is not the law.

■ The lease assigned to plaintiff carried with it, even in the absence of a special covenant for quiet enjoyment, an implied one binding upon the defendants during the continuation of the term (Civ. Code, § 1927; *Kushner* v. *Home Service Co.*, 91 Cal.App. 692, 697 [267 P. 555]). Whether expressed or implied, this covenant means that a tenant shall not be wrongfully evicted or disturbed in his possession by the lessor. (*McDowell* v. *Hyman*, 117 Cal. 67, 69 [48 P. 984]; *Mills* v. *Richards*, 84 Cal.App. 52, 57 [257 P. 542].) ■ The rule is firmly entrenched, and the authorities supporting it are legion, that any disturbance of the tenant's possession by the lessor or at his procurement which renders the premises unfit for the purposes for which they are demised or which has the effect of depriving the tenant of the beneficial enjoyment of the premises, amounts to a constructive eviction, provided

the tenant vacates the premises within a reasonable time. (*Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 P. 662, 20 A.L.R. 1363]; *Agar* v. *Winslow,* 123 Cal. 587, 593 [56 P. 422, 69 Am.St.Rep. 84]; *Sanders* v. *Allen,* 83 Cal.App.2d 362, 366 [188 P.2d 760]; *Johnson* v. *Snyder,* 99 Cal.App.2d 86 [221 P.2d 164]; *Riechhold* v. *Sommarstrom Invest. Co.,* 83 Cal. App. 173, 177 [256 P. 592]; *Giraud* v. *Milovich,* 29 Cal.App.2d 543, 547 [85 P.2d 182]. See, generally, 3 Williston, Contracts, §§ 891 and 892.) There is language in some cases which makes the landlord's intention to deprive the tenant of the enjoyment and use of the premises an essential element of constructive eviction. (52 C.J.S., Landlord and Tenant, § 455.) ▮ But when it is said that in order to constitute a constructive eviction there must be an intent on the part of the landlord to deprive the tenant of the premises, it is not meant that there must exist an actual subjective intention in the mind of the landlord. It may be inferred from the character of his acts if their natural and probable consequences are such as to deprive the tenant of the use and enjoyment of the leased premises. (*Thirteenth & Washington Sts. Corp.* v. *Neslen,* —— Utah —— [254 P.2d 847, 849]; *Burnstine* v. *Margulies,* 18 N.J.Super. 259 [87 A.2d 37]; *Skally* v. *Shute,* 132 Mass. 367, 372; *Buchanan* v. *Orange,* 118 Va. 511 [88 S.E. 52, 54, L.R.A. 1916E 739, Ann.Cas. 1918D 391]; 2 Tiffany, Landlord and Tenant, 2d ed., § 185(b), p. 1259.) ▮ Thus, the question of intention is coupled with the presumption that a landlord intends the natural and probable consequences of his acts; and where the acts of the landlord effectively deprive the tenant of the use and enjoyment of the premises, the intent to evict is implied from the character of the acts done.* (*Powell* v. *Merrill,* 92 Vt. 124 [103 A. 259]; *Kimball* v. *Lincoln Theatre Corp.,* 125 Neb. 677 [251 N.W. 290]; *Leech* v. *Husbands,* 4 W.W.Harr.(Del.) 362 [152 A. 729]; *Skally* v. *Shute, supra*; *Schindler* v. *Grove Hall etc. Lunch,* 282 Mass.

---

*Under the more modern doctrine in cases of this character, a showing of the landlord's intent to dispossess is not required; ''if the landlord's acts necessarily deprive the tenant permanently or for a substantial time of the enjoyment of the property, it can hardly be material with what intention the landlord acts.'' (*Westland Housing Corp.* v. *Scott,* 312 Mass. 375 [44 N.E.2d 959, 963]; 3 Williston on Contracts, § 891.) As the court stated in *Bromberger* v. *Empire Flashlight Co.,* 138 Misc. 754 [246 N.Y.S. 67, 71], ''It is not essential that the acts of the landlord should be committed with intent to compel the tenant to leave the property, or to deprive him of the beneficial enjoyment thereof. If they are calculated to and do make it necessary for the tenant to move, they constitute an eviction.''

32 [184 N.E. 673] ; 52 C.J.S., Landlord and Tenant, § 455; 2 Tiffany, Landlord and Tenant, § 185(b), p. 1259.) ▇ Thus, by the great weight of authority, ''it is not necessary that there should be an express intention of the landlord to compel his tenant to leave the demised premises or to deprive him of the beneficial enjoyment thereof; acts or omissions of the landlord which are calculated to and do, deprive the tenant of the use and enjoyment of the demised premises and make it necessary for him to remove from the premises constitute a constructive eviction.'' (52 C.J.S., Landlord and Tenant, § 456, p. 173.)

▇ In consonance with these established principles, the trial court correctly rendered judgment in plaintiff's favor upon its findings that the installation of the wooden posts resulted in depriving plaintiff of the beneficial enjoyment of a substantial part of the leased premises and that defendants could have provided the necessary building support by other means and in a manner which would not have interfered with plaintiff's business requirements. On the basis of the evidence disclosed by the record and the facts found, the acts of the lessors in interfering with plaintiff's use and enjoyment of the premises were of so substantial a character as to constitute an invasion of his rights under the lease and to justify his vacation of the premises. The plaintiff sustained his burden of proving that the lease was terminated by a constructive eviction upon his establishing that defendants had breached their covenant of quiet enjoyment by materially disturbing his possession through alterations of the premises which rendered them unfit for the purpose let. (*McDowell* v. *Hyman*, 117 Cal. 67 [48 P. 984] ; *Riechhold* v. *Sommarstrom Invest. Co.*, 83 Cal.App. 173 [256 P. 592] ; *Mills* v. *Richards*, 84 Cal.App. 52 [257 P. 542]. See *Agoure* v. *Lewis*, 15 Cal.App. 71 [113 P. 882].) To avoid liability, it was incumbent on defendants to justify their actions, if possible. This they attempted by their defense that only repairs and alterations required by law were made. The trial court found against this claim upon a showing that the Department of Building and Safety had approved the use of steel U-plates, a method of support that did not require wooden posts and would not interfere with plaintiff's use of the premises. Defendants urge that their decision to use wooden posts was taken in good faith since steel was not available due to the war emergency. Though this was not urged as an affirmative defense in the pleadings, some testi-

mony was introduced on the subject. This showed only that there was a shortage of steel and that prices were high. Defendant Gaylord Burke testified that his agent inquired about the cost of steel for the repairs and learned that it would be "around $1,200." Burke thereupon told plaintiff that he considered the cost prohibitive. Defendants did not present evidence which convinced the court that they could not have legitimately procured steel. The court apparently indulged in the reasonable inference that although defendants' original plan called for a steel U-beam, they switched to wooden posts to reduce the cost to themselves despite the fact that they were upon notice that this would effectively put plaintiff out of business.

For their proposition that the burden was upon plaintiff to establish bad faith in order to recover damages for constructive eviction, defendants rely principally on *Lindenberg* v. *MacDonald*, 34 Cal.2d 678 [214 P.2d 5, 14 A.L.R.2d 1436]. In that case, an owner leased premises to defendants who agreed to tear down the existing structure and erect a new building. In 1942, defendants subleased store space in the building to plaintiff for a term of three years. The sublease was made subject to all the terms and conditions of the lease between defendants and the owner of the property. A provision in the sublease read: "Lessor may terminate this lease in the event that the existing improvements are to be torn down to make way for the erection of a new building on sixty (60) days' written notice addressed to the lessee." In November, 1944, defendants notified plaintiff in writing to vacate, although they had not as yet secured the required construction permit from the War Production Board, which they nevertheless "felt sure" would be granted. Thereafter, the war in Europe took a turn for the worse and defendants were advised their chances of obtaining a permit were uncertain. Defendants thereupon informed their tenants, including plaintiff, of the situation, and offered to allow them to stay on a "short termination" basis. Plaintiff declined this offer and vacated the premises on January 13, 1945. Defendants' application for a permit was denied on January 23, 1945. However, they continued their efforts until a permit was granted in August, 1945, when they tore down the old building and commenced construction of the new one. Plaintiff brought suit for damages for constructive eviction and the trial court directed a verdict for defendants. This was affirmed on appeal. The court held that the mere giving of a notice by de-

fendants to vacate in the good faith belief that they were acting in accord with the condition stipulated in the lease did not amount to a constructive eviction. Therefore, plaintiff's surrender of the premises was voluntary and did not give rise to a cause of action for damages.

It is readily apparent from this outline of the facts that there is no parallel between the Lindenberg case and the instant matter. In the Lindenberg case, defendants were obligated to the owners to demolish the building and erect a new one, a fact with which the plaintiff was acquainted. They gave notice of termination in the good faith belief that a permit to build would be obtained. They fully informed their tenants of their uncertainty about getting a permit because of the war situation and offered them the opportunity to remain on a "short termination" basis until a permit was granted. All of their tenants except plaintiff and one other remained on this basis. They diligently proceeded with their attempts to secure a permit and completed the wrecking of the building as soon as was reasonably possible under the circumstances. It is in relation to these facts that the court stated (p. 683) ". . . the trial court correctly determined, *in the light of all the circumstances shown*, that in order for plaintiff to recover damages for constructive unlawful eviction, or on any conceivable appropriate theory, it was incumbent upon him to establish bad faith by defendants and that no evidence was introduced which on any tenable view could support a finding of bad faith." (Italics added.) This language was used in a case where the only disturbance of the tenant's possession was through the medium of a notice to vacate under a lease providing for its termination in case the building was to be torn down to make way for the erection of a new one. In the special factual circumstances there obtaining, the court employed the quoted phraseology in announcing the rule that where a tenant abandons possession in response to a notice to vacate given by the lessor in the good faith belief that a condition stipulated in the lease is about to take place, the lessor will not be liable for damages for constructive eviction if it subsequently happens that the condition did not materialize. ▆ "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." (*Porter v. Bakersfield & Kern Elec. Ry. Co.*, 36 Cal.2d 582, 590 [225 P.2d 223]; *Eatwell v. Beck*, 41 Cal.2d 128, 136 [257 P.2d 643].) The cases discussed and relied upon in the Linden-

berg case centered around the question of whether a mere notice to quit followed by vacation of the premises by the tenant is sufficient to constitute constructive eviction. (*Lindenberg* v. *MacDonald,* 34 Cal.2d 678, 683-684 [214 P.2d 5, 14 A.L.R.2d 1436].) But that is not the issue presented in the case at bar, where the incidents disturbing the tenant's peaceful possession occurred upon the leased premises by the physical acts of the lessor. ██ In such a case, where the acts on their face constitute a substantial interference with the tenant's right of quiet enjoyment which the lessor has covenanted to respect, the burden is upon the lessor to justify his conduct. There is no suggestion in the Lindenberg case of any disposition to modify the well settled principles previously discussed by requiring the tenant to establish bad faith on the lessor's part where constructive eviction is claimed under circumstances in which the lessor's physical acts on the premises have deprived the tenant of the beneficial use and enjoyment of the property leased. (See *Kulawitz* v. *Pacific etc. Paper Co.,* 25 Cal.2d 664, 670 [155 P.2d 24]; *Johnson* v. *Snyder,* 99 Cal.App.2d 86, 88 [221 P.2d 164]; *Aaker* v. *Smith,* 87 Cal. App.2d 36, 46 [196 P.2d 150]; *Sanders* v. *Allen,* 83 Cal.App. 2d 362, 366 [188 P.2d 760]; *McDowell* v. *Hyman,* 117 Cal. 67, 71 [48 P. 984]; *Mills* v. *Richards,* 84 Cal.App. 52, 57 [257 P. 542]; and collection of cases, 15 Cal.Jur., §§ 89, 90, pp. 679, 680.)

The case of *Riechhold* v. *Sommarstrom Invest. Co.,* 83 Cal. App. 173 [256 P. 592], cited by defendants, does not support their position. In that case, the defendant company, owner of the premises, purporting to comply with a building inspector's order to replace four wooden pillars, unnecessarily installed a solid wall which partitioned off plaintiff's butcher shop from a part of the premises which he subleased from the codefendant, Witkow, who operated a grocery store. The grocery and butcher shop together were known as the ''Sunkist Market.'' Witkow had suggested to the defendant company that the partition wall be erected. The court upheld an award as to the defendant company without any showing of bad faith on its part, stating: ''It is an established rule that any disturbance of a tenant's possession by a landlord or by someone acting under his authority, whereby the premises are rendered unfit for occupancy for the purposes for which they are demised, or the tenant is deprived of the beneficial enjoyment of the premises, amounts to a constructive eviction if the tenant so elects and surrenders his possession. [Cita-

tions.] . . . Conceding the right in the landlord to have entered the premises to put them in a safe condition, this authority did not warrant it in making the extensive improvements which it did . . . The company . . . had no right to disturb plaintiff's possession beyond that reasonably necessary to comply with the demand, and having done so it was bound to compensate the tenant for the loss he suffered by reason of being compelled to abandon the leased premises for the unexpired term.'' As to defendant Witkow, who had not himself made the installation complained of, liability was predicated on his testimony that he had requested the defendant landlord to construct the wall in question to get rid of plaintiff.

Defendants assert that the court failed to find on the material issue raised by their defense to the effect that they made only such repairs and alterations as the law required and that plaintiff was not deprived of a substantial portion of the leased premises. We attach no merit to this claim. The findings are that the required work could have been accomplished to the satisfaction of the Department of Building and Safety either by the use of steel U-plates or by wooden posts. This is evidenced by the approval given to the plans calling for the steel plate. Thus, as found by the court, it was not true ''that the posts installed by the defendants were required by law to be so installed.'' The court found also that the installation of the upright posts interfered with plaintiff's business and that defendants ''could have provided adequate support for the second floor by a means other than the installation of additional posts . . . and in a manner that would not interfere with plaintiff's business.'' These express findings, and the general finding that all allegations in the answer inconsistent with the express findings are untrue, fully dispose of all issues raised by this defense.

It is also urged that, as a matter of law, there is no evidence to support the findings last mentioned.* As has been indicated, the notice from the Department of Building and Safety contains no requirement that wood posts be used;

*These findings read as follows: ''It is true that defendants could have provided adequate support for the second floor by a means other than the installation of additional posts in the demised premises and in a manner that would not interfere with plaintiff's business or render the premises unfit or unsuitable for pool hall purposes or deprive the plaintiff of the beneficial enjoyment of said premises. It is true that the defendants knew another means of support was practicable, prior to defendants' installation of said additional posts in the premises. It is not true that the posts installed by defendants were required by law to be so installed.'' (Finding XIV.)

in fact, this department approved the use of the steel U-plate. The engineer who drew the plans testified that the utilization of the steel U-plate would have solved the problem without the need of additional posts. However, defendants contend that ''no evidence contradicts the testimony that steel was not available.'' We have already observed that if steel were not available, this should have been pleaded as a matter of defense, which defendants failed to do. But contrary to their contention, defendant Gaylord Burke testified that he had learned from his agent that he could obtain steel for $1,200; this witness also testified that he told plaintiff he considered the cost to be prohibitive. Building Inspector Turner testified that he observed steel being used in building construction in 1951. A reasonable inference from this testimony is that defendants elected not to use steel because of its cost.

Defendants also attack the finding that the premises were leased for the purpose of operating a pool hall business. The original lessee testified that immediately after signing the lease he commenced to operate a pool hall, which he continued to operate until the assignment of the lease and sale of the business to plaintiff. Plaintiff testified he discussed his operations with Gaylord Burke immediately on taking over with a view toward obtaining a five year lease and Mr. Burke told him that ''it would be all right'' and that he would approve such a lease. Also of significance is the fact that in the lease to Crawford which was assigned to plaintiff, there was inserted on the printed form the following provision: ''It is further agreed that in case of the Plaster falling on the (sic) any of the tables, the said R. Crawford will assume all liabilatty (sic) of the same.'' In the light of the lessee's business, it is most likely the term ''tables'' as therein used refers to pool tables and lends inferential support to the court's finding that the property was leased for the operation of a pool hall.

On the facts as found, there was such a substantial disturbance of the plaintiff's rights under the lease and deprivation of his beneficial enjoyment of the premises by the acts of the defendants as to constitute a constructive eviction, giving him justifiable cause to vacate the premises. Since the court decided the case in accordance with the applicable law in the first instance, there was no basis for the granting of a new trial on the ground that the decision was against law.

We turn now to the question of whether the trial court

abused its discretion in granting a new trial on the ground of newly discovered evidence. The applicable rules are well settled. ▮ On the hearing of the motion for a new trial, it is incumbent on the moving party to show that he has exercised reasonable diligence to discover before the trial the evidence upon which he relies. (*Slemons* v. *Paterson,* 14 Cal. 2d 612, 616 [96 P.2d 125] ; *Edwards* v. *Floyd,* 96 Cal.App.2d 361, 362 [215 P.2d 117].) ▮ A motion for a new trial will be denied where the evidence might have been produced by the exercise of reasonable diligence, or where the moving party has not shown due diligence in discovering and producing it, or where no reason is shown why the evidence might not, with reasonable diligence, have been discovered and produced. (*Mitchell* v. *Preston,* 101 Cal.App.2d 205, 207-208 [225 P.2d 229] ; 20 Cal.Jur., New Trial, p. 85.) ▮ "A general averment of 'diligence' is insufficient. The particular circumstances or acts performed by the moving party must be stated [citations]." (*Edwards* v. *Floyd, supra.*) In support of this ground, the affidavit of defendants' attorney, Victor Bewley, states that "he has newly discovered evidence material to the defendants which he could not with reasonable diligence have discovered and produced at the trial." This evidence is stated to consist of an "unsigned affidavit" of one S. S. Smith, identified as the Priority Chief of the National Production Authority of the United States Government, attached as an exhibit. This "unsigned affidavit" was to the effect that the affiant was acquainted with the availability of steel during 1951 and that there was a shortage of structural steel, including heavy U-beams, during 1951 and 1952. The Bewley affidavit states that the above newly discovered evidence confirms Gaylord Burke's testimony that he was unable to obtain a U-beam after diligent search, as well as Mr. Turner's testimony that there were limitations imposed by the federal government on the acquisition of steel.

It is at once clear that under the authorities, defendant's affidavits were insufficient to support an order granting a new trial on the ground of newly discovered evidence. The affidavit is devoid of a single statement of fact which shows any diligence, or even an effort, to obtain, prior to the time of trial, the alleged newly discovered evidence. Counsel's statement that he has newly discovered evidence "which he could not with reasonable diligence have discovered and produced at the trial" was a mere conclusion, and "did not constitute facts sufficient to show that defendants could not have

obtained the evidence prior to the time of trial had they used reasonable diligence.'' (*Edwards* v. *Floyd, supra,* p. 363.) No showing is made that S. S. Smith, who is designated as an official of the federal government in its Los Angeles office, the place where the action was tried, was not available at the time of trial. The nonavailability of steel was a matter of defense, and, as plaintiff points out, the question was raised in the first days of the trial, October 15 and 16, 1952. The case was continued for completion of the trial to October 21st. No explanation is given why Smith's evidence could not have been obtained during this interval, if not earlier. It is thus plain that defendants' motion was so lacking in support upon this ground that there was no legal basis upon which the trial court could exercise its discretion. The following language from *Slemons* v. *Paterson,* 14 Cal.2d 612, 615, 616 [96 P.2d 125], in which the Supreme Court reversed an order granting a new trial on the ground of newly discovered evidence, is particularly in point here: ''While the granting or denial of a motion for a new trial upon the ground of newly discovered evidence is generally a matter within the discretion of the trial court, and such an order will be affirmed unless a clear abuse of discretion is shown, this rule has no application where the affidavit or other evidence upon which the order is made furnishes no basis for the exercise of such discretion. Such is the situation in the case at bar. The affidavit of plaintiffs is so lacking in essential particulars that it afforded no basis for the exercise of the discretion of the trial court in granting the motion.

''. . . It does not appear from plaintiffs' affidavit that they made any effort whatever to obtain the evidence prior to the trial. If the evidence had been obtained and presented, the issues presented by the pleadings could have been finally determined without further delay or additional expense to the parties. It is a matter of public interest that there be an end to litigation and that a new trial should not be granted for the purpose of enabling a party to produce further evidence unless he has shown some legally justifiable excuse for not having produced such evidence at the former trial. (See Code Civ. Proc., § 657, subd. 4.) The affidavits supporting the motion must show that there has been no lack of diligence. [Citing cases.]''

The order likewise cannot be upheld on the ground of ''excessive damages, appearing to have been given under the influence of passion or prejudice.'' (Code Civ. Proc.,

§ 657, subd. 5.) Such an order is necessarily granted on the ground of the insufficiency of the evidence to sustain a verdict for the amount awarded. (*Sinz* v. *Owens*, 33 Cal.2d 749, 760 [205 P.2d 3, 8 A.L.R.2d 757]; *Griffey* v. *Pacific Elec. R. Co.*, 58 Cal.App. 509, 513 [209 P. 45].) The court awarded the sum of $4,375 based on anticipated net profits of $175 per month for the unexpired 25 months of the lease.

The loss of prospective business earnings for the balance of the lease is an item of damage which may be properly awarded where a tenant has been wrongfully evicted. (*Hawthorne* v. *Siegel*, 88 Cal. 159 [25 P. 1114, 22 Am.St.Rep. 291]; *Tooke* v. *Allen*, 85 Cal.App.2d 230, 237-238 [192 P.2d 804]; *Riechhold* v. *Sommarstrom Invest. Co.*, 83 Cal.App. 173, 178 [256 P. 592].) The evidence as to net profits was undisputed and was arrived at under applicable principles of law. The record fully demonstrates that the award was not influenced by passion or prejudice, nor is this contended in defendants' brief. Their argument is directed solely to the fact that under the law they were not *liable* for the damages which plaintiff sustained. The fallacy of this argument has already been established.

Defendants also assert that they are insulated from any claim for damages by virtue of a regulation 2, section 22, of the National Production Authority which provides in part that no person shall be held liable for damages "for any act or failure to act resulting directly or indirectly from compliance with a rule, obligation or order of N.P.A. . . ." This contention is specious. Defendants do not cite in their brief, nor does the record disclose, any particular rule, regulation or order of the N.P.A. with which they were obliged to comply, nor do they refer to any regulation prohibiting them from using steel for repair of the premises.

Lastly, it is contended the order was proper on the ground of errors of law occurring at the trial. Defendants assert that the trial court erred in overruling an objection to the following question asked of Gaylord Burke under cross-examination: Q. "In that conversation with Mr. Crawford and Mr. Pierce, was there anything said by Mr. Pierce to the effect that his purchase, his completion of the purchase of this business would depend upon his being assured that there was a proper lease or an extension of lease and also the getting of the necessary city license." Mr. Burke answered: "There was a discussion regarding the possible extension of the lease, but I don't remember anything about the acquiring of a

license or anything to that effect.'' The error complained of is the impropriety of admitting oral evidence tending to vary the terms of the documents transferring Crawford's business to plaintiff. However, Burke was a stranger to that contract. ''The rule that parol evidence cannot be received to contradict or vary a written contract does not apply in an action between a party to a contract and a third party [citations].'' (*Broder* v. *Epstein,* 101 Cal.App.2d 197, 199 [225 P.2d 10].)

 The other alleged error relates to the sustaining of plaintiff's objections to a line of questions asked of Gaylord Burke on direct examination with regard to whether he had done only the work required by the notice from the Department of Building and Safety. These questions clearly would have required answers as to the witness' conclusion as to whether the installation of posts was required, and were properly excluded. It was the province of the court to determine whether the notice required such posts to be installed, or merely required that additional support be provided without spelling out any specific means to achieve this result.

Since the findings in the case at bar properly dispose of all issues, the decision of the trial court not having been ''against law'' and no other ground appearing upon which the order can be upheld, the order granting a new trial must be reversed.

Order reversed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 6, 1954, and respondents' petition for a hearing by the Supreme Court was denied September 8, 1954.