In the Matter of CONSUMERS WORLD, Inc., in consolidation with Kormon Water Co., Inc., d/b/a Alan Sales Co., Debtors.

Nos. 115–57, 215–57.

United States District Court
D. Massachusetts.

Feb. 19, 1958.

James F. Selligman, Fall River, Mass., for appellant.

Ellis F. Brown, Boston, Mass., trustee.

Alfred Siegel, Boston, Mass., receiver.

Wasserman & Salter, Boston, Mass., for receiver.

FRANCIS J. W. FORD, District Judge.

This matter comes before the court on a certificate of the referee on a petition for review of an order entered by the referee in the course of proceedings for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

On June 21, 1955, Albert and Mildred L. Moss leased to Consumers World, Inc., the debtor, for a ten-year period a store in Fall River adjacent to a larger store also owned by them and leased to the Atlantic & Pacific Tea Co. The lease to the debtor contained a provision in paragraph 6 that "the lessors agree that no business shall be permitted, other than that presently conducted, on the entire premises owned by them as referred to above, including the leased area, which will conflict with the business of the lessee as presently to be conducted hereunder." The lease to A & P allowed the latter to sell any kind of merchandise without restriction, but the terms of this lease were not known to the debtor. In accordance with the provisions of the lease debtor paid to lessors the sum of $11,500, an amount equivalent to one year's rent, which was to be held by lessors as a security deposit, and eventually to be applied to payment to the tenth year's rent.

The debtor filed a petition for leave to disaffirm the lease and for an order for the return of the $11,500 security deposit. An order to show cause why the petition should not be granted was issued, returnable on April 5, 1957. Thereafter hearings were held on May 13, June 4 and June 14, 1957. On October 4, 1957, the referee entered an order granting leave to reject the lease and ordering the return of the security deposit. The lessors object to the latter part of the order and also move to remit the certificate to the referee for corrections of the record.

The first ground for objection is that the referee had no jurisdiction in a summary proceeding to order lessors to return the deposit. This contention must be rejected. A bankruptcy court has summary jurisdiction over money or property of the debtor held by a third party and deposited by the debtor as security. In Matter of Muntz TV Inc., 7 Cir., 229 F.2d 228, 231. In any case lessors failed to make timely objection to the summary jurisdiction of the referee as required by § 2, sub. a(7) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(7) as amended, which provides "* * * and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objec-

tion to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of the court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction; * * *" The referee in his certificate states that no objection to the summary jurisdiction of the bankruptcy court was made at any time. Lessors point only to the fact that the question of jurisdiction was included in the statement of questions raised in lessors' brief filed with referee in connection with the hearing on the debtor's petition, two to three months after the filing of the petition. This clearly was not a sufficient compliance with § 2, sub. a(7). The fact that debtor in a single petition sought leave to reject the contract, as to which the referee concededly had summary jurisdiction, and also the return of the deposit in no way prevented lessors from raising by an answer to the petition or an appropriate motion the question of jurisdiction with regard to the prayer for a return of the deposit.

■ On the merits the referee found that lessors had violated their covenant against competitive business, that this constituted a constructive eviction entitling lessee to termination of the lease and the return of its security deposit. These findings are fully warranted by the facts found and the evidence summarized in the referee's certificate. From these it appears that in June, 1955, the A & P at the store adjoining that leased to the debtor was engaged primarily in the sale of food items, with a small space devoted to such non-food items as mops, floor wax, sponges and a few plastic houseware items. Beginning in November, 1955, the A & P started to sell toys and games. Thereafter the A & P added to the number of non-food items it was selling, including charcoal, outdoor grills, lawn chairs and other summer furniture, aluminum ware, garden hose, shovels, records, tableware, steak knives, Christmas cards and wrapping paper,

Christmas tree lights, plants, paper, envelopes, umbrellas, laundry baskets, pillows, TV trays, lamps, bed spreads, comforters, sheets, towels, mattress covers, work gloves, flashlights, ash trays, electric irons and extension cords, overnight bags and encyclopedias. These were all articles of the type sold by debtor which operated a discount store for the sale of general merchandise other than food items. There was clearly such substantial change from the few non-food items being sold in June, 1955, as to justify a holding that the lessors' covenant against competitive business had been violated. Such a violation entitled the debtor to rescind the lease, R. M. Sedrose, Inc., v. Mazmanian, 326 Mass. 578, 95 N.E.2d 677. Upon rescission the lessee would be relieved from liability for rent for the remainder of the term of the lease and would be entitled to the return of its security deposit.

■ Of course, if the lessee wishes to exercise his right to rescind he must do so within a reasonable time after the violation. Palumbo v. Olympia Theatres, Inc., 276 Mass. 84, 176 N.E. 815, 75 A.L.R. 1111.

Lessor contends that this rule is applicable here since lessees remained in occupancy of the premises for almost a year and a half after lessors first violated their covenant in November of 1955. However, the referee has found on the basis of testimony at the hearing before him that the "violations continued to grow in magnitude until it was impossible for the debtor to continue in business at approximately Christmas time, 1956." Thereafter lessee continued in business and paid rent through February 23, 1957. On February 12, 1957, the lessee's petition for an arrangement was filed and on March 13, 1957, the petition for authority to reject the lease and for return of the security deposit was filed. The keys to the store were turned over to the attorney for the lessors on May 23, 1957.

■ It is not necessary to decide whether lessee delayed unreasonably in protecting its rights after the original

violation of the competitive business covenant. Even assuming it could be held that lessee by doing no more than complain of earlier violations had waived its right to treat them as a constructive eviction, the increase in the competing business at Christmas in 1956 amounted to a new violation. Even if lessee had waived its rights as to earlier violations, this increase in competition could be treated as a new ground for abandonment of its lease. In the light of the circumstances it cannot be said that lessee or its receiver failed to act with reasonable promptness to abandon the premises after the Christmas 1956 violation.

Referee's order is affirmed and the petition for review is dismissed.