[Civ. No. 2079. Fifth Dist. June 4, 1975.]

PETROLEUM COLLECTIONS INCORPORATED,
Plaintiff and Appellant, v.
EDWARD W. SWORDS, Defendant and Respondent.

842

**COUNSEL**

Charles M. Farrington and David P. Connelly for Plaintiff and Appellant.

Eugene L. Adams for Defendant and Respondent.

**OPINION**

**GARGANO, J.**—Plaintiff is a collection agency, and it brought this action against the defendant in the court below to recover the sum of $6,043.24; the complaint alleged that the money was unpaid back rent due and owing by defendant to plaintiff's assignor, Texaco, Inc., hereinafter referred to as Texaco. Plaintiff appeals from the judgment entered in favor of the defendant.

The pertinent facts are undisputed.

On April 17, 1969, Texaco leased a parcel of land located on the northwest corner of the intersection of Adams Road and Freeway 99 near the City of Fowler to defendant, Edward Swords. The written lease was for a period of 10 years, called for a rental of $500 a month and embraced land, a service station and related buildings and facilities. It also embraced a large "modular" type sign which was located on top of the service station building and which could be seen approximately one-half mile down the freeway; the sign was equipped with individual letters five feet in height, illuminated from within by neon bulbs; the letters spelled out the word "TEXACO."

On May 9, 1969, the Fresno County Building Inspector discovered that the modular type sign had been installed without a county building permit; also, he discovered that the sign had been fastened down improperly and constituted a fire hazard because it was too close to the vents to the gasoline storage tanks. The inspector ordered the hazardous condition rectified or the sign removed; the sign was taken down by the original builder at Texaco's request.

After taking down the sign, Texaco furnished defendant with an "antique," 30-year-old, dilapidated, enamel billboard which could not be seen from the freeway. Defendant then insisted that Texaco furnish him with a sign similar to the one which was on the service station when

he leased the property; when Texaco failed to do so, defendant refused to pay any rent.

On March 13, 1970, Texaco and defendant cancelled the lease and defendant vacated the premises; however, approximately two months prior to cancellation, defendant subleased the premises to a third party; neither defendant nor the third party paid any rent to Texaco for any part of the 11-month period the premises were occupied.

At the conclusion of the court trial, the trial judge found, in essence, that when the leasing agreement in question was executed the parties contemplated that defendant would take advantage of the trade generated by the freeway and that the large sign on top of the service station was an integral part of the leased premises. The judge further found, in essence, that the sign was installed by Texaco, that the installation did not conform with county safety regulations, that the sign was a fire hazard, and that it was removed at Texaco's request even though the hazardous condition could have been rectified, readily, by the addition of elbow joints and extension pipe to the vents. The trial judge concluded that Texaco breached the lease's implied covenant of quiet enjoyment, that this implied covenant and defendant's covenant to pay rent were mutually dependent and that as a consequence defendant was not obligated to pay any rent to Texaco for the 11-month period he and his sublessee occupied the premises.

Preliminarily, we compendiously reject plaintiff's suggestion that the implied covenant of quiet enjoyment was not breached because defendant, not Texaco, was obligated to repair or replace the modular type sign which was on top of the service station when Texaco leased the property to defendant. While the lease required defendant to maintain the premises ". . . in good repair and in a clean, safe and healthful condition [,]" the fact remains that the sign was installed by Texaco without a building permit and did not conform with county safety regulations. A landowner is duty bound to comply with local building regulations, and it is irresponsible to argue that Texaco could avoid this duty by foisting the responsibility of repairing or replacing the unsafe structure it had installed before it leased the premises to an unsuspecting tenant merely because the lease obligated the tenant to keep the premises in good repair during the period of the tenancy. Such a proposition is against public policy and "flies in the face" of common sense. (See *Glenn R. Sewell Sheet Metal, Inc.* v. *Loverde*, 70 Cal.2d 666, 671-675 [75 Cal.Rptr. 889, 451 P.2d 721]; 49 Am.Jur.2d, Landlord and Tenant, § 943, pp. 917-918.)

We turn to the nature and scope of the covenant of quiet enjoyment.

■ It has long been the rule that in the absence of language to the contrary, every lease contains an implied covenant of quiet enjoyment. (*McDowell* v. *Hyman,* 117 Cal. 67, 70 [48 P. 984]; *Pierce* v. *Nash,* 126 Cal.App.2d 606, 612 [272 P.2d 938].) Initially, the covenant related solely to the right of possession and only protected the lessee against any act of molestation committed by the landlord or anyone claiming under him, or by someone with paramount title, which directly affected the tenant's use and possession of the leased premises; the covenant was construed to protect the lessee against physical interference only. (See e.g., 49 Am.Jur.2d, Landlord and Tenant, § 334, p. 349.) In recent years, the covenant of quiet enjoyment has been expanded, and in this state, for example, it insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy. (*Green* v. *Superior Court,* 10 Cal.3d 616, 625, fn. 10 [111 Cal.Rptr. 704, 517 P.2d 1168]; 49 Am.Jur.2d, Landlord and Tenant, § 336, p. 351.) ■ Under this view, the landlord's failure to fulfill an obligation to repair or to replace an essential structure or to provide a necessary service *can result* in a breach of the covenant if the failure substantially affects the tenant's beneficial enjoyment of the premises. (*Groh* v. *Kover's Bull Pen, Inc.,* 221 Cal.App.2d 611, 614 [34 Cal.Rptr. 637]; *Sierad* v. *Lilly,* 204 Cal.App.2d 770, 773 [22 Cal.Rptr. 580]; *Pierce* v. *Nash, supra,* 126 Cal.App.2d 606, 612.)

■ We consider next the question as to whether an implied covenant of quiet enjoyment and an express covenant to pay rent are mutually dependent; at common law, it was the traditional concept that covenants in leases were always independent.

The foundation for the tenant's obligation to pay rent is his right to use and possess the leased property for the purposes contemplated by the tenancy; rent is the compensation paid by the tenant in consideration for the use, possession and enjoyment of the premises. Consequently, when a tenant's possession of leased property has been interfered with, physically, by the landlord, or someone claiming under him, or by a person with paramount title, the tenant's covenant to pay rent is no longer supported by valid consideration and he is relieved of that obligation. The loss of possession, in short, goes to the very root of the consideration for the tenant's promise to pay rent, and after the eviction the obligation to do so ceases. (*Telegraph Avenue Corp.* v. *Raentsch,* 205 Cal. 93, 100-101 [269 P. 1109, 61 A.L.R. 366].) It is in this sense that the

implied covenant of quiet enjoyment and the covenant to pay rent are mutually dependent.

However, when the act of molestation merely affects the tenant's beneficial use of the premises, the tenant is not physically evicted and he has a choice in the matter. He can remain in possession and seek injunctive or other appropriate relief or he can surrender possession of the premises within a reasonable time thereafter. If the tenant elects to remain in possession, his obligation to pay rent continues unless the landlord has breached some other express or implied covenant which the covenant to pay rent is dependent upon. (*Veysey* v. *Moriyama,* 184 Cal. 802, 805-806 [195 P. 662, 20 A.L.R. 1363]; see *Green* v. *Superior Court, supra,* 10 Cal.3d 616, 625, fn. 10, 631-637; cf. *Medico-Dental etc. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 418-419 [132 P.2d 457].) If, on the other hand, the tenant elects to surrender possession of the premises, a *constructive* eviction occurs at that time and, as in the case of an actual eviction, the tenant is relieved of his obligation to pay any rent which accrues thereafter. (49 Am.Jur.2d, Landlord and Tenant, § 576, pp. 553-554.) It is this doctrine, known as the doctrine of constructive eviction, ". . . which expanded the traditional 'covenant of quiet enjoyment' from simply a guarantee of the tenant's possession of the premises [citations] to a protection of his 'beneficial enjoyment' of the premises . . . ." (*Green* v. *Superior Court, supra.* 10 Cal.3d 616, 625, fn. 10.)

■ Stated in another manner, the covenant of quiet enjoyment is not broken until there has been an actual or constructive eviction (*Clark* v. *Spiegel,* 22 Cal.App.3d 74, 80 [99 Cal.Rptr. 86]; *Slater* v. *Conti,* 171 Cal.App.2d 582, 585-586 [341 P.2d 395]); an actual eviction takes place when the tenant is physically dispossessed of the property; a constructive eviction occurs when the act of molestation merely affects the beneficial use of the property, causing the tenant to vacate the premises. If the tenant is evicted or if he surrenders possession of the premises within a reasonable time after the act of molestation has occurred, he is relieved of his obligation to pay rent accruing as of the date he surrendered; he also may sue for his damages or plead damages by way of offset in an action brought against him by the landlord to recover any unpaid rent that accrued prior to the surrender of the premises. (*Veysey* v. *Moriyama, supra,* 184 Cal. 802, 806; *McAlester* v. *Landers,* 70 Cal. 79, 82, 84 [11 P. 505].) If, in the case of an interference with the tenant's beneficial enjoyment of the premises, the tenant does not surrender the premises within a reasonable time after the date of the interference, he is deemed to have waived his right to abandon; what constitutes a reasonable

period of time is a question of fact to be determined by the trier of fact after considering all of the circumstances. (49 Am.Jur.2d, Landlord and Tenant, § 304, pp. 319-321.)

■ In this case, there was sufficient evidence for the court to find that Texaco's failure to repair or replace the large modular sign, which was on top of the service station when the property was leased to defendant, substantially affected defendant's beneficial enjoyment of the property as contemplated by the parties; there was evidence to show that the parties knew that defendant would have to take advantage of the trade generated by the freeway in order to operate a service station successfully on the leased property at the monthly rental called for by the lease; there was also evidence to show that the sign was an integral part of the premises and that it was needed to attract drivers of vehicles traveling on the freeway. ■ Nevertheless, we reverse the judgment. Defendant and his sublessee remained in possession of the service station for almost 11 months after the sign was removed by Texaco; albeit the trial judge found that during most of the period the parties continued to negotiate for a replacement sign, the judge made no finding as to whether defendant's conduct in staying in possession and in entering into a sublease with a third party was reasonable under the circumstances. Furthermore, even if we were to assume that defendant's conduct in remaining in possession during the 11-month period in question was reasonable under the circumstances, the covenant of quiet enjoyment did not relieve him of his obligation to pay rent during the period; the covenant was not breached until defendant vacated the premises on March 13, 1970. Defendant should have pled his damages by way of offset in the action brought against him for the stipulated rental by Texaco's assignee.

The cases of *Medico-Dental etc. Co.* v. *Horton & Converse, supra,* 21 Cal.2d 411, and *Green* v. *Superior Court, supra,* 10 Cal.3d 616, upon which defendant relies, do not support his position. In *Medico-Dental,* the tenant leased space in the lessor's building for use as a drug store; the lease contained an express prohibition against the landlord leasing other space in the same building for that purpose. The lessor leased space in the building to one of the lessee's competitors. The Supreme Court held that the covenant not to lease was contractual and a substantial part of the consideration for the lessee's covenant to pay rent. Resorting to contractual principles to interpret the intent of the parties, the court concluded that under the terms of the contract the breach of the covenant not to lease space to lessee's competitors excused the lessee from his obligation to pay rent.

In the *Green* case, the Supreme Court was concerned with an implied warranty of habitability in a residential lease. Suggesting that the independent covenants rule relating to leases had outlived its usefulness, the court explained that the application of contract principles was ". . . particularly appropriate in dealing with residential leases of urban dwelling units." (*Supra,* 10 Cal.3d at pp. 624, 635.) The court went on to hold that ". . . the tenant's duty to pay rent [was] 'mutually dependent' upon the landlord's fulfillment of his implied warranty of habitability." (*Supra,* 10 Cal.3d at p. 635.) It is significant that in a footnote the court stated that the covenant of quiet enjoyment gave little help to the typical low income tenant because to avail himself of that covenant the tenant must vacate the premises. (*Supra,* 10 Cal.3d at p. 625, fn. 10.)

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.