ANGUS POLK, APPELLANT, *v.* RALPH
M. ARMSTRONG, RESPONDENT.

No. 7489

September 17, 1975                    540 P.2d 96

*Cooke & Roberts,* Reno, for Appellant.

*Legarza, Lee & Barengo,* Reno, for Respondent.

558

## OPINION

By the Court, MOWBRAY, J.:

The appellant, Angus Polk, hereinafter referred to as Tenant, brought this action against his landlord, Ralph M. Armstrong, hereinafter referred to as Landlord, the respondent, to recover damages for breach of a lease agreement between the parties. At the conclusion of Tenant's case, Landlord moved to dismiss the complaint under Rule 41(b) of the Nevada Rules of Civil Procedure. The district judge deferred ruling on the motion until after Landlord had presented his evidence, at which time the judge granted the 41(b) motion and ordered Tenant's complaint dismissed with prejudice. Tenant has appealed from the lower court's judgment of dismissal.

1. By a lease agreement dated April 19, 1961, Tenant leased the premises known as "Fashion Cleaners and Tailors", 910 B Street, Sparks, Nevada, from the former owner of the

property, Fannie M. Armstrong. Fannie M. Armstrong died on August 31, 1970, and Landlord, who is her son, is her successor in interest. Prior to the time Tenant obtained the lease, a James Wilson operated a dry-cleaning business on the premises. Tenant purchased the business from Wilson, obtained a new lease from Mrs. Armstrong, equipped the building, and operated a dry-cleaning business from April 1961 until December 1968. Tenant then sold the business to a Mr. Froggett and assigned the lease to him. During the latter part of 1969, Froggett defaulted on the contract of sale that he had with Tenant, and he vacated the premises. Landlord, who was then managing the property for his mother, prevented Tenant from reentering the premises by changing the locks. Finally, after extensive negotiations between Landlord and Tenant and their attorneys, their differences were settled, and Landlord returned keys to the premises to Tenant in July 1970. Thereafter, Tenant applied to the City of Sparks for a license to conduct a business on the premises. The City refused a certificate of occupancy, and the license was not issued, although all prior businesses conducted on the premises had been licensed. A certificate of occupancy was denied by the City because there was an opening in the east wall of the building to a small glassed-in area that had been used as part of the cleaning establishment premises. The glassed-in area did not meet the requirements of the fire code because of its proximity to the wall of a nearby building. The City demanded that the glassed-in area be removed and the opening in the wall closed with a cement-block wall. Tenant entered into negotiations with Landlord regarding construction of the new wall. Tenant offered to construct the wall and deduct the cost from the monthly rental payments. Landlord refused to correct the situation or permit Tenant to do so. Tenant continued to pay rent to Landlord through November 1971. In early 1972, Landlord again changed the locks and denied Tenant access to the premises. Landlord then took possession of the property and constructed a new wall that met the fire code requirements.

2. The judgment of the trial court dismissing Tenant's complaint under Rule 41 (b) of the Nevada Rules of Civil Procedure was predicated solely on the proposition that Tenant's action was one for constructive eviction only and that, since Tenant had allowed his equipment to remain on the premises, he had not abandoned possession thereof.[1] The district judge, in

---

[1]Landlord permitted Tenant to remove his equipment at the conclusion of the trial below.

ordering the complaint dismissed, relied on a Nevada case, Baker v. Simonds, 79 Nev. 434, 386 P.2d 86 (1963). The fact situation there is different from the case at bar. In that case, 2½ months before their lease was to expire, the tenants brought an action in which they sought a court order declaring that they lawfully held possession of a beauty shop in the Royal Nevada Hotel. In Baker, the landlord was restrained from dispossessing the tenants pending the court determination. Fourteen months after suit was commenced, and after the lease had expired, the tenants, by a supplemental complaint, changed the complexion of the case to one for constructive eviction. At that time, the temporary restraining order was dissolved, and the case went to trial. A jury awarded the tenants damages. The trial judge granted the landlord's motion to set aside the verdict and directed the entry of judgment in the landlord's favor. This court affirmed the trial judge's ruling and held that, notwithstanding whatever had happened giving the tenants cause to sue the landlord for damages resulting from a constructive eviction, the tenants had waived any claim for such relief by electing to remain in possession and by seeking a court decree authorizing their continued possession. This court further held that, after the nature of the action was changed and the tenants had abandoned possession of the premises, the relationship of landlord-tenant did not exist, since the tenants remained in possession solely by grace of the court's restraining order after the written lease had expired. The court said that, absent the relationship of landlord-tenant at the time possession is surrendered, the remedy of damages for constructive eviction simply does not exist. A constructive eviction is not compatible with wrongful possession.

In the present case, Tenant had not been in actual possession of the premises since July 1970, and in early 1972 Landlord changed the locks and occupied the premises. The record shows that Tenant was denied a certificate of occupancy and was unable to operate his business on the leased premises because the City had demanded the construction of a cement-block wall to close an opening in the east wall of the building. Landlord refused to comply with the municipal order.

3. There is a difference of opinion among American jurisdictions whether, in the absence of an agreement to the contrary, the landlord or the tenant is responsible for making or bearing the expense of ordinary repairs ordered by a public authority. Cases on the allocation of the duty to comply with

applicable laws between a lessor and lessee are collected in Annot., 33 A.L.R. 530–534 (1924), and Annot., 22 A.L.R.3d 521, 555 (1968). An analysis of the cases indicates that the overwhelming majority of jurisdictions considering the question have held that if the repairs ordered are substantial, or structural in nature, such that they could not have been contemplated by the parties at the time the lease agreement was executed, the landlord and not the tenant is responsible for making them. The reason for this rule is that any alteration or repair of the kind usually ordered by a public authority would ordinarily be outside the tenant's common law duty to repair, and the expenses of compliance would more properly be regarded either as capital expenditures or as necessary carrying charges to be paid out of rent.[2] Furthermore, in such cases public policy requires that someone at all times be responsible for complying with all statutes and orders affecting property. Since the property owner is initially under the duty to comply with all such statutes and orders, he, as lessor, remains subject to that duty, unless the duty is assumed by the lessee. Glenn R. Sewell Sheet Metal, Inc. v. Loverde, 75 Cal.Rptr. 889, 451 P.2d 721 (Cal. 1969). Moreover, for a lessee to make extensive structural repairs that would revert to the benefit of the lessor would be inequitable. Gaddis v. Consolidated Freightways, Inc., 398 P.2d 749 (Ore. 1965).

In the case at bar, the question of repair was not involved. The City was demanding the construction of a block wall that had not theretofore existed. This modification was a substantial alteration and was structural in nature. There is no evidence indicating that the parties contemplated such a municipal order at the time the lease agreement was executed. Consequently, we conclude that Landlord was under a duty to construct the wall.

4. The next issue presented is whether under the facts of the instant case Landlord's failure to construct the wall amounted to a constructive eviction.

In Magnolia Warehouses v. Morton Realty Co., 117 S.E.2d 552 (Ga. 1960), a municipal authority had ordered the installation of electrical locks on elevator doors as a condition of continued use of elevators essential to the operation of the tenant's

---

[2]See Wolfe v. White, 197 P.2d 125 (Utah 1968); 1 American Law of Property § 3.80, at 353–355 (A. J. Casner ed. 1952); 2 W. Walsh Commentaries on the Law of Real Property § 165, at 232–233 (1947).

business on the premises. The court found that under the lease agreement the landlord was responsible for making this alteration and held that his failure to accomplish the alteration within the time allowed by the municipal authorities, coupled with the threatened padlocking of the elevators by the municipality so as to prevent the tenant from using them, constituted a constructive eviction. The court said, at 554:

". . . The failure of the landlord to make such alterations or to begin them within the time limited by the notice given by the municipal authorities, . . . when coupled with the threatened padlocking of the elevators so as to prevent the tenant from using them where their use was essential to the use of the premises by the tenant, constituted a constructive eviction and authorized the tenant to vacate the premises and to refuse to pay rent after such premises were vacated. [Cites omitted.]"[3]

Also, in Johnson v. Snyder, 221 P.2d 164 (Cal.App. 1950), the court held there was a constructive eviction where a city health officer ordered plaintiff to close his restaurant in a stall rented from defendant because of dirty and unsanitary conditions allowed by defendant to exist in other parts of the building not leased by the plaintiff.

We believe that Landlord's failure to repair the wall to conform to the code amounted to a constructive eviction, and the fact that Tenant's equipment remained in the premises should not bar him from recovery for damages resulting from his eviction. Additionally, Landlord in early 1971 changed the locks on the building and then occupied the building to make the repairs demanded by the City, which acts constituted an actual eviction. Only then did Tenant commence this action.

5. Tenant introduced evidence of damages which Landlord at trial made no effort to refute.

Where the wrongful eviction of a tenant results in the breaking up of his business conducted by him upon the premises, he may recover the damages thereby sustained, including lost profits, provided those damages can be ascertained with a reasonable degree of certainty. See Rockey v. Bacon, 470 P.2d 804 (Kan. 1970); Western Rebuilders & Tractor Parts, Inc. v. Flemley, 391 P.2d 383 (Ore. 1964).

In conclusion, the record shows that Tenant was denied a

---

[3]See also New Chester Theater Corp. v. Bischoff, 210 App.Div. 125, 205 N.Y.S. 641 (1924); Galland v. Shubert Theatrical Co., 105 Misc. 185, 172 N.Y.S. 775 (1918), aff'd 220 App.Div. 704, 221 N.Y.S. 437 (1927).

certificate of occupancy and that he was unable to operate his business on the leased premises because the City had demanded the construction of a cement-block wall to close an opening in the east wall of the building. The construction of this wall was the legal obligation of Landlord, and not Tenant. Landlord refused to comply with the municipal order. When Tenant, because of the difficulties, ceased paying rent, which he had a legal right to do, Landlord changed the locks on the premises, went into possession, and constructed the wall which the City had demanded. The wrongful eviction, which had been constructive, became actual. The trial court erred in granting Landlord's Rule 41(b) motion. The judgment is reversed, and the case remanded with instructions to the trial court to determine on the present record the damages sustained by Tenant and to enter judgment accordingly, with interest from August 1, 1973. NRAP 37.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.