MEDICAL MULTIPHASIC TESTING, INC., FORMERLY HEALTH EVALUATION CENTERS INCORPORATED, A NEVADA CORPORATION, APPELLANT, v. LILLIAN B. LINNECKE, EXECUTRIX OF THE ESTATE OF HARRY F. LINNECKE, AND LILLIAN B. LINNECKE, INDIVIDUALLY, RESPONDENTS.

No. 9792

November 9, 1979                                        602 P.2d 182

*Leonard T. Howard, Sr., Chartered,* of Reno, for Appellant.

*Petersen & Petersen,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Linnecke commenced an unlawful detainer action for non-payment of rent against Medical Multiphasic Testing, Inc. (MMTI), in which MMTI denied its liability for rent and counterclaimed for damages for a constructive eviction.

Trial occurred before a jury. When all proofs had been offered Linnecke moved for a directed verdict on the ground that no defense to the claim for unpaid rent had been shown, and that there was no constructive eviction as a matter of law. The trial court doubted whether a constructive eviction had been shown, but preferred to submit all issues to the jury reserving power to correct a mistake should the jury make one. Consequently, it denied the motion for a directed verdict.

The jury returned its verdict in favor of MMTI, and awarded MMTI damages of $27,000 upon its counterclaim. Judgment was entered on the verdict. Thereafter, Linnecke moved for judgment notwithstanding the verdict. That motion was granted and a judgment in the sum of $14,200 for rent due upon surrender of the premises less the last month's rent paid in advance was entered for Linnecke. In its decision the court observed that there was no constructive eviction of MMTI by

Linnecke. This appeal is from the judgment n.o.v. For the reasons hereafter expressed, we affirm.

In March 1970 Linnecke leased a building to MMTI for a term of 10 years at a rental of $1,100 per month for the first 5 years and $1,200 per month for the second 5 years. The term of the lease commenced May 15, 1970. Rent was paid, usually late, through June 1971. Rent due July 15, 1971, was not paid. Therefore, on July 16 Linnecke gave appropriate notice to pay rent or quit the premises. On the last day for the payment of rent pursuant to the notice, MMTI requested a one-day extension of time. It is disputed whether Linnecke extended time until noon the following day or for the full day. In any event, during the late afternoon of the next day rent was tendered to an employee of Linnecke who refused to accept the tender because he had not been authorized to do so. A subsequent tender by counsel for MMTI to counsel for Linnecke also was refused. On July 28, 1971, Linnecke filed an unlawful detainer action.

That action was decided in February 1972, the court ruling that Linnecke had waived timely payment of rent with the result that there was no unlawful detainer. No appeal was taken. While that action was pending, Linnecke, in January 1972, caused another notice to pay rent or quit to be served upon MMTI demanding rent due from July 1971 through January 1972. The present action was commenced September 8, 1972, to recover rent due.

The lease gave MMTI the right to sublet. The tenant had insisted upon such a provision since it would have no use for the building if its medical testing program proved unsuccessful. The tenant did cease doing business about nine and one half months after the lease commenced and, therefore, proceeded to search for a subtenant. In July and August 1972, MMTI negotiated with Economic Opportunity Board, a prospective subtenant. The Board was willing to pay the sum of $13,600 covering the full subrental period on the condition that Linnecke would forego her demand for accrued rent until the end of the lease term. She refused to do so.

In asking this court to set aside the judgment n.o.v. and reinstate the judgment entered upon jury verdict, the appellant contends that substantial evidence was introduced to establish all essential elements of a constructive eviction as alleged in its counterclaim. We turn to discuss this central issue.

1. The district court, in ruling that there was no constructive eviction as a matter of law, relied upon our opinion in Baker v. Simonds, 79 Nev. 434, 386 P.2d 86 (1963). We there

noted that a constructive eviction results from an active interference with, or disturbance of, the tenant's possession by the act of the landlord because of which the whole, or a substantial part of the premises is rendered unfit for occupancy for the purpose for which it was demised. Moreover, the tenant must elect to treat such interference as an eviction and surrender the premises within a reasonable time. There can be no constructive eviction if the tenant continues in possession even though disturbed in the beneficial enjoyment of the premises.

When the mentioned principles are applied to the case at hand, it is clear that the district judge was compelled to enter judgment n.o.v. The assertion that the first unlawful detainer action instituted by Linnecke together with her refusal to defer collection of accrued rent until the end of the lease term, constituted a constructive eviction, is specious. A landlord is not guilty of constructive eviction by commencing an unlawful detainer action against a tenant who has not paid rent as agreed. Rent had not been paid when due. The court, on conflicting evidence, found that the landlord had waived timely payment and that as a result there was no unlawful detainer. Surely, this is not to be treated as a nontrespassory intrusion upon the tenant's right to possession when the tenant did not so treat it and did not surrender possession within a reasonable time thereafter. Baker v. Simonds, supra.

The spark which ignited this controversy was the inability of MMTI to pay the rent it had agreed to pay. The failure of MMTI to pay rent does not form the basis for a damage claim against Mrs. Linnecke. Neither may a tenant claim a constructive eviction when it continues in possession after the landlord's commission of acts which the tenant contends would justify abandonment of the premises. In such circumstances the tenant waives any claim for damages resulting from an alleged constructive eviction. Here, MMTI continued in possession for about one year and three months after the first unlawful detainer action was commenced, which action forms the main predicate for the tenant's claim of a constructive eviction.

It is evident that the reason a sublease with Economic Opportunity Board was not consummated was the inability of MMTI to pay rent then accrued. That default may not be charged to Mrs. Linnecke.

2. The appellant asserts that the lower court erred when it awarded Linnecke the sum of $14,200 for unpaid rent. The amount of unpaid rent is not disputed. The appellant simply contends that it is not obliged to pay that sum because it was constructively evicted from the premises. Since we agree with the district court that there was no constructive eviction as a matter of law, this claim of error fails.

Affirmed.

MOWBRAY, C. J., and MANOUKIAN and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

This appeal involves two unlawful detainer actions instituted by respondent Lillian B. Linnecke against appellant Medical Multiphasic Testing, Inc. (MMTI). Pursuant to a ten-year lease agreement effective March 15, 1970, appellant MMTI, as tenant, rented certain business property in Reno from respondent Linnecke, as landlord. The lease expressly granted appellant an absolute right to sublet the premises. Appellant MMTI insisted on that provision since the corporation would have no use for the building if its contemplated medical testing program proved unsuccessful. MMTI borrowed approximately $45,000, which it invested in remodeling the premises, and procured a $25,000 loan for operating expenses.

In January or February, 1971, MMTI ceased doing business and began looking for a subtenant. The lease was then the company's only asset. Because of the premises' increased value, due to improvements, the company expected to sublet at a substantial profit, which it would use to repay its creditors. Although it had not yet found a subtenant, MMTI met its rental obligation to respondent Linnecke through June, 1971, by obtaining stockholder loans.

When MMTI failed to pay the rent due in July, 1971, respondent Linnecke served MMTI notice either to pay the rent due or to vacate the premises within ten days. On the last day prescribed by the notice, appellant, through its agent Leonard T. Howard, telephoned Mrs. Linnecke and indicated he would deliver the rent that day if necessary, but if she would agree he would deliver it the following day. Respondent Linnecke agreed to payment on the next day. The following afternoon, Mr. Howard appeared at respondent Linnecke's office and tendered a check for the rental payment. Pursuant to instructions from Mrs. Linnecke, who had absented herself, her office manager refused the check. Mrs. Linnecke also later rejected a subsequent tender by mail of the rental payment.

Respondent Linnecke then filed a complaint for unlawful

detainer. MMTI successfully defended this first suit. After trial in January, 1972, the court decided there was no unlawful detainer and dismissed the complaint with prejudice.[1] Mrs. Linnecke moved to amend the judgment and for a new trial, seeking judgment for $9,900, the rent accrued since July 1971. The court ultimately denied her relief, holding it improper in an unlawful detainer action to award past-due rent where there had been no unlawful detainer.[2] Mrs. Linnecke did not appeal and the appropriate period therefor expired July 9, 1972.

During the litigation period, MMTI failed to sublet the premises, although it retained a realtor for that purpose. In response to Mrs. Linnecke's repeated demand for payment of all rent accrued since July, 1971, MMTI denied liability, claiming Mrs. Linnecke's wrongful initiation and maintenance of the unlawful detainer action clouded MMTI's title, preventing it from subletting.

Sometime in July, 1972, MMTI negotiated with the Economic Opportunity Board, a prospective subtenant. Although very much interested in subleasing the premises from MMTI, upon advice of its attorney, the Board refused to execute a prepared agreement because of unsettled "technicalities" of the court's decision.[3]

In an effort to retain its only asset, appellant continued to negotiate with both Mrs. Linnecke and the prospective subtenant. MMTI held special board-of-directors and stockholders meetings on August 7, 1972, in which it decided that one last negotiation effort should be made with Mrs. Linnecke and that, if unsuccessful, the company should surrender possession of the premises and file an action for constructive eviction. On August 8, MMTI officers contacted Mrs. Linnecke, who referred them to her attorney. The officers tendered respondent's attorney a check from the prospective subtenant in the sum of $13,600, covering the full subrental period, on

[1] The court ruled MMTI defaulted in payment of rent but Mrs. Linnecke waived the default by agreeing to allow the additional day for payment. The court found tender of payment was made as agreed upon and that Mrs. Linnecke, without legal reason, refused to accept the rental payment. Therefore, contrary to an assertion in the majority opinion, Mrs. Linnecke's wrongful refusal to accept belated payment, after she had induced it, was "the spark which ignited this controversy." This fact was determined by the district court, and it therefore is no longer subject to any cognizable "dispute."

[2] In so holding, the court did not address the merits of whether or not MMTI owed rent accrued during litigation.

[3] Apparently the Board's attorney was referring to the dispute regarding MMTI's liability for past-due rent.

condition that Mrs. Linnecke would forego her demand for rent accrued during litigation until the end of the lease term. Mrs. Linnecke refused.

On September 8, 1972, MMTI surrendered possession of the premises to respondent Linnecke who, that same day, initiated this second unlawful detainer action. MMTI answered, and conterclaimed for damages for constructive eviction. After the jury returned a verdict in favor of appellant on its counterclaim, Mrs. Linnecke made a motion for judgment notwithstanding the verdict, or alternatively, for new trial. The court granted j.n.o.v., concluding as a matter of law that MMTI waived any right to claim damages for constructive eviction when it chose to remain in possession and defend the initial unlawful detainer action. Accordingly, the court ordered judgment entered in favor of Mrs. Linnecke for the rent accrued until the time of surrender.[4] The court further ordered that if the j.n.o.v. is reversed, respondents "shall be entitled to a new trial on the issue of damages." MMTI appeals, claiming the court erred in deciding as a matter of law there could be no constructive eviction. I agree.

1.   In its decision, relying primarily on Baker v. Simonds, 79 Nev. 434, 386 P.2d 86 (1963), the trial court held that by electing to remain in possession of the premises while defending the initial unlawful detainer action, MMTI waived any right to claim damages for constructive eviction. In *Baker,* this court had stated:

> [T]he relevant inquiries concern the nature of the tenancy . . . , an evaluation of the landlord's nontrespassory intrusion upon the tenant's possession, and whether possession was abandoned within a reasonable time after the occurrence of the acts complained about; and, of course, the extent of damage once the foundation for liability is found to exist.

79 Nev. at 438, 386 P.2d at 88. However, in Polk v. Armstrong, 91 Nev. 557, 540 P.2d 96 (1975), after distinguishing the facts of the *Baker* case, this court had later stated:

> We believe that Landlord's failure to repair the wall to conform to the code amounted to a constructive eviction, and the fact that Tenant's equipment remained in the premises should not bar him from recovery for damages resulting from his eviction. Additionally, Landlord in

---

[4]The exact figure awarded was $14,200, representing the amount of rent due at the time of surrender of the premises less the last month's rent which appellant paid in advance at the beginning of the lease term.

early 1971 changed the locks on the building and then occupied the building to make the repairs demanded by the City, which acts constituted an actual eviction. Only then did Tenant commence this action.

91 Nev. at 562, 540 P.2d at 99.

MMTI argues the waiver rule should not apply in this case because Mrs. Linnecke's intrusion was continuing and cumulative, and thus the jury could have found MMTI abandoned the premises within a reasonable time. This argument is persuasive. The first act of alleged wrongful interference was the initial unlawful detainer action, improperly placing the legal rights of any prospective subtenant in doubt. The rights of MMTI under the first action were not finally determined until July 9, 1972, the date when the appeal time ran on the judgment rendered in MMTI's favor. Then, Mrs. Linnecke continued to frustrate MMTI's effort to obtain a subtenant by refusing to consent to the proposed sublease to EOB, and refusing to accept a check for six months' rent from EOB. On September 8, 1972, MMTI returned the keys to respondent, intending to file a claim for damages for constructive eviction. On the same day, the instant action was commenced by respondent.

I think the jury could properly determine that these acts amounted to a continuing wrongful intrusion by the landlord, and that thus, when MMTI gave up possession on September 8, ·1972, it did so within a reasonable time. At that point, MMTI inferably no longer had reason to believe *any* sublease of the property would be acceptable to Mrs. Linnecke. *Cf.* In re Consumers World, 160 F.Supp.238 (U.S.D.C. Mass. 1958).

2. The respondent contends, however, that MMTI remained liable for the rent so long as its possession of the leased premises continued, citing the general rule stated in Volpert v. Papagna, 83 Nev. 429, 443 P.2d 533 (1967); Schultz v. Provenzano, 69 Nev. 324, 251 P.2d 294 (1952); Automobile Supply Co. v. Scene-in-Action Corp., 172 N.E. 35 (Ill. 1930). This rule has been applied, even where the landlord's interference was continuing. *See* Petroleum Collections Inc. v. Swords, 122 Cal.Rptr. 114 (Cal.App. 1975). In regard to respondent's contention, I think the principles stated at 6 Williston, Contracts (3d ed. 1962) § 892 at 650–651, concerning equitable relief, are applicable:

In the case of material breaches of a lease by a lessor, where the injury is sufficiently serious, equitable relief by way of injunction or specific performance may be granted. *We perceive no reason why equitable relief, in appropriate*

*circumstances, should not be given by way of (1) a declaration . . . that the wrongful acts of the lessor justify treating those acts as a constructive eviction, (2) appropriate consequential relief, and (3) assessment of damages. . . .* Such relief is more nearly adequate than the incomplete and hazardous remedy at law which requires that the lessee (a) determine at its peril that the circumstances amount to a constructive eviction, and (b) vacate the demised premises, possibly at some expense, while remaining subject to the risk that a court may decide that the lessor's breaches do not go the essence of the lessor's obligation. (Footnotes omitted; emphasis added.)[5]

Here, we deal with a business lease. MMTI's right to sublease would be the sole asset of the corporation if it ceased doing business during the ten-year lease term. I conclude that under the facts of this case, the stated contract principles apply. Where, as here, the business lessee is substantially deprived of the beneficial use of the premises by the lessor's wrongful acts, the lessee should be relieved of his obligation to pay rent under the lease.

Under the law as given in the judge's instructions to the jury, the jury could reasonably find facts establishing that MMTI had proved a prima facie case; that respondent, by her wrongful and continuing acts, interfered with and prevented MMTI's sublease of the premises, thereby preventing MMTI from using and enjoying the property in the fashion contemplated by the parties; and that these acts rendered the sublease provision valueless to MMTI, relieving MMTI of any obligation to pay rent.

For this court to uphold the court's order granting judgment n.o.v., respondent had to demonstrate that MMTI failed to prove a claim for relief as a matter of law. This has not been done.

The trial court also granted a new trial on the issue of damages in the event of reversal on the j.n.o.v. Entry of this order was also error. As this court stated in Fox v. Cusick, 91 Nev. 218, 533 P.2d 466 (1975) at 221, the fact that, in the view of the trial judge, the weight of the evidence may have been against the verdict returned does not invest the judge with authority to order that the case be tried again. Respondent must show that if the jurors had properly applied the instructions of the court,

---

[5]*Cf.* Medico-Dental Bldg. Co. v. Horton & Converse, 132 P.2d 457 (Cal. 1942) (covenants not to compete and to pay rent were dependent; the exclusive right to conduct business was vital to the lessee's successful operation). *See* 3 Witkin, Summary of California Law (8 ed. 1973), § 423; 2 Powell, Real Property (Rev. ed. 1977), ¶ 221 [1] n.11, p. 184.

it would have been impossible to reach the verdict the jury reached. Eikelberger v. Tolotti, 94 Nev. 58, 574 P.2d 585 (1978); Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969).

Here, evidence established that MMTI secured a subtenant who was willing and able to pay MMTI the sum of $13,600, covering a six-month term. The right to sublease was absolute. The rental to be paid to respondent under the lease with respondents was $1,100 per month until May 1975, at which point rental increased to $1,200 per month. The court instructed the jury that the measure of damages was the amount of the sublease rental from constructive eviction to time of trial, less monthly rental owed respondent, less the last month's rent.

The profit to MMTI on the EOB sublease would have been $14,000 per year until May 1975, and $12,800 thereafter. The jury awarded damages in the amount of $27,000 to MMTI, i.e. a sum approximately equal to two years' profit on the EOB sublease. The jury, following the court's instructions, could reasonably have found this figure was due to MMTI as damages.

We should therefore reverse and remand with directions to the trial court to enter judgment for defendant MMTI on its counterclaim in the amount of $27,000; and we should instruct the court not to proceed to a new trial on the question of damages.