OPINION OF THE COURT
Paul L. Klein, J.
This case raises two questions of apparent first impression: (1) Under the UCC, does a landlord’s deposit of monthly rent checks, without an "under protest” endorsement, waive objection to the maker’s claimed status as a tenant, if a previous check was restrictively endorsed? (2) Does Division of Housing *805 and Community Renewal (DHCR) Operational Bulletin No. 85-1 entitle an occupant to lease renewal if he occupied the apartment with his brother, the sole named tenant, from the beginning of the lease term, and continued there alone after the lessee departed, but assiduously concealed this from the landlord until his cover was blown?
First, alas, the facts.
A. JOINT OCCUPANCY
Somewhere in the period December 1977/January 1978, Gary Leshin moved into the subject apartment, pursuant to a lease which listed only his name as the tenant (but which did not bar cooccupancy by family members). His brother Joel Leshin claims to have moved in at the same time. While the burden of proving this rests upon him, and while he is no "Ten” as to credibility (of which more below), I am satisfied that the brothers did in fact move in simultaneously. (Petitioner introduced some evidence that supports the inference of a later arrival, which would of course affect the impact of Operational Bulletin No. 85-1; it did not, however, suffice to overcome Joel’s testimony, especially since he was indisputably on the scene not long afterwards.)
B. GARY’S STATUS
Gary moved out by February 1982. From the credible testimony, it is clear that he abandoned the premises as his primary residence.
C. JOEL’S STATUS
Joel asserts that the brothers made known to one and all, from the outset — even before the original lease was signed— that he was to be an actual cotenant. He offers no credible explanation for the omission of his name from the lease; for having made all rent payments via Gary’s checks for three years after Gary moved out; or for (admittedly) lying to the new landlord in October 1985 by stating Gary still lived in the apartment.
Against this pattern of concealment, Joel asserts that he regularly and frequently informed the prior owners and staff that he was in fact Gary’s cotenant. He swears to the exact words of colloquy extending back 7 and 8 years. (His apparent total recall evidences some gaps, however; for instance, while *806 recounting a specific conversation in the bathroom with a plumber, he could not recall whether Gary was present at the time.) Besides the general unsatisfactory nature of his tale, he had to be cautioned numerous times about his obvious efforts to avoid straight answers. I find he failed abysmally to establish his burden of proving scienter. He was an occupant, not a cotenant.
D. THE HARD PART
If that were all she wrote, my decision would be easy: Joel having failed to prove his defense, the petition must be granted. But thorns remain.
1. THE UCC PROBLEM
In January 1985, after the landlord evidenced suspicion that Gary had left, Joel opened a joint bank account for the specific purpose of issuing rent checks; the checks were imprinted "gary leshin and joel leshin”. The checks were signed by Joel. Before depositing the first one, the landlords’ agent endorsed upon the rear this restriction: "under protest— wrong tenant”, thus preserving the right to challenge Joel’s status under UCC 1-207.[1]
But the next eight monthly rent checks — February through September 1985, all drawn on the same account and signed by Joel — were deposited without any restrictive legend.
Did the January restriction carry forward? Or did the failure to repeat the legend constitute acceptance of Joel as the tenant he sought to be? Waiver would not be imputed to a landlord who unknowingly or accidentally accepted checks from a "wrong” maker, but, in our case, we have landlords who (a) suspected Joel’s status, (b) knew how to protect against the consequences of accepting his check, and (c) had in fact used the appropriate protective device in January. It would have been easy to write those four simple words again: "under protest, wrong tenant”.[2]
*807 I hold therefore that, by their conduct from February through September 1985, petitioners accepted Joel Leshin as their tenant.
However, in view of all the circumstances, I find that he is not entitled to a renewal lease but, rather, to a new lease, at the increased amount permitted by law.
2. THE DHCR PROBLEM
For purposes of appellate review, I address the DHCR question mentioned at the outset but mooted by my UCC determination: (a) I would rule that issuance of Operational Bulletin No. 85-1 was ultra vires, (b) If the bulletin were deemed valid, I would hold that the Division could not have intended to extend its protective embrace to persons who (however unnecessarily) had schemed to defraud their landlords.
CONCLUSION
Gary Leshin having defaulted, petitioner shall have judgment of possession against him.
The petition as to Joel Leshin is dismissed; in view of the circumstances set forth above, there shall be no costs or counsel fees.
At the close of trial, the parties agreed that Joel Leshin would pay use and occupation to petitioners, at the old rate, through June. Petitioner may offer a lease, at the new rate, effective July 1, 1986 or any time thereafter.

. It was long believed that this section, which departs from the common-law rule, applied only to transactions involving "goods”. But the Court of Appeals late last year held that it applies to all checks, regardless of the nature of the underlying transaction. (Horn Waterproofing Corp. v Bushwich Iron & Steel Co., 66 NY2d 321.)

. If bored with that, perhaps they could have tried a letter: "Dear Joel Leshin — we remind you that we do not consider you our tenant. Acceptance of checks signed by you on your joint account with Gary Leshin is deemed by us payment of rent on his behalf. If you have any problem with this, contact yours truly.” (I do not recommend this method of avoiding boredom, and I expressly disclaim liability to anyone who tries it and loses.)