OPINION OF THE COURT
Paul L. Klein, J.
I. THE CORE QUESTION
This licensee holdover proceeding raises an issue of apparent first impression — one not mentioned by either party: The context is the taboo imposed by RPAPL 711 (1) against accepting rent in the window period between the effective termination date of a tenancy and the date the summary proceeding is commenced. Is acceptance of a full month’s rent before the window period begins allowed if the payment covers time within the window period?
*913 The facts at bar are these: petitioner served a notice of termination on March 2, 1987, effective March 16th. On March 7th, petitioner accepted respondent’s check for payment of that month’s rent, in full. This proceeding was commenced by service of petition and notice of petition on March 30th.
I hold that petitioner’s acceptance and retention of rent for the period March 16th through March 31st vitiated the notice of termination as a matter of law, and divests the court of subject matter jurisdiction.
II. A SUBSIDIARY QUESTION
Petitioner’s managing agent testified that he considered the tenant’s payment use and occupancy (U&O) rather than rent. (This arose in a different context since, as noted earlier, neither party mentioned the problem raised by section 711 [1]. The way the U&O issue was posed is discussed below, in section III.)
I am unaware of any authority for a landlord’s treating rent payments as U&O absent the umbrella of litigation, i.e., a stipulation or a court order. Possibly a "private” agreement could accomplish the aim. But in no way can it be done unilaterally, as the agent purports to have done here.
In any event, with particular reference to the window period in question, freedom to deem payments as U&O would completely defeat the ban expressly imposed by the Legislature in section 711 (1), a ban upheld by the judiciary. (See, for instance, Oppenheim v Spike, 107 Misc 2d 55, 57 [App Term, 1st Dept 1980].)
Were mere bookkeeping devices sufficient to defeat the statute, every petitioner would add language along these lines to notices of termination: "After such date you must continue to pay me each month, but I will label the payment 'use and occupation’ until I serve a Petition upon you”!
III. OTHER QUESTIONS
As noted earlier, the parties did not litigate the issue I have just discussed. They did, however, litigate certain questions in the area of waiver. Was management’s ploy of allocating Ms. Padmore’s monthly payments to U&O sufficient to avoid creating a tenancy?
The undisputed facts are these: The original tenant, Ms. *914 Caroline Cohen, brought our respondent, Ms. Jamesetta Pad-more, into the household as a home attendant. Almost immediately, Ms. Padmore began to bring Ms. Cohen’s rent payments into the management office. Soon thereafter, she began to use her personal checks for this purpose; they were leg-ended only to the extent of "August rent”, or the like, with no indication of agency or of the apartment covered by the payment.
In the spring of 1986, Ms. Cohen was taken to a nursing home. Ms. Padmore immediately notified Mr. Dunn, the manager. She continued to pay rent as in the past: via her personal checks.
A few months later, Ms. Cohen died. Again Ms. Padmore promptly notified Mr. Dunn. Monthly payments continued as before, but Mr. Dunn testified he deemed all payments from that time on to be U&O, not rent; there was no testimony that Ms. Padmore was so informed.
In June 1986, the Authority commenced a licensee holdover proceeding against Ms. Padmore. It was dismissed in January 1987 for a jurisdictional defect affecting the notice of termination. While that proceeding was pending, Ms. Padmore continued to pay in the regular manner, and Mr. Dunn continued to credit the payments to U&O — this time, within the protective embrace of a court-ordered stipulation.
After the dismissal, matters returned to "normal” for February: Ms. Padmore paid for the month and Mr. Dunn silently christened the payment U&O.
The rest is history. (See, sections I and II above.)
Certainly no tenancy was created by the payments made and accepted while Ms. Padmore lived in the apartment with her employer, Ms. Cohen, nor when the latter moved to a nursing home, leaving her employee behind. Likewise, no problem is raised by the payments made while the first holdover was alive, i.e., from June 1986 through January 1987.
As to payments made in the window period preceding that earlier proceeding, we have no information.
But during two critical periods, the Authority took Ms. Padmore’s payments without any basis for a U&O designation (and never informing her of that designation), despite the fact that the checks were legended to represent payments of rent as such.
*915 Nor did the Authority counterlegend them by such devices as crossing out the original legend, or accompanying the deposit endorsement with such terms as "under protest” or "all rights reserved”. (Horn Waterproofing Corp. v Bushwick Iron & Steel Co., 66 NY2d 321; Festa v Leshin, 132 Misc 2d 804 [Civ Ct, NY County, Klein, J.], mod on other grounds 138 Misc 2d 399 [and with a subsequent history unrelated to our issue].)
(1) Upon being notified that Ms. Cohen had died, Mr. Dunn knew Ms. Padmore had no obligation to pay rent. The payments she did make were not on behalf of her late employer; Mr. Dunn knew that too, or he would have had no reason to deem them U&O from that time on (as he testified insistently had been his decision).
The legal consequence of accepting Ms. Padmore’s self-designated rent payments — no matter what Mr. Dunn labeled them in his mind — was to create a landlord-tenant relationship.
On analysis, the first holdover would have earned dismissal had it ever gone to trial on the merits. It did not, since Ms. Padmore stipulated to a judgment of possession accompanied by a stay of eviction. Later, as indicated above, the proceeding was dismissed entirely, on jurisdictional grounds.
(2) At that moment, the parties reverted to the status they had enjoyed from the time petitioner created a tenancy in Ms. Padmore, just after Ms. Cohen’s death. In fact, the petitioner created the tenancy once more (if somehow it be deemed to have become null): by accepting Ms. Padmore’s rent check in February, with full knowledge of the "defect” in her status, the petitioner waived its objections to her continued occupancy. (Oppenheim v Spike, supra, at 57.)
IV. CONCLUSION
Based on all the foregoing, I hold the petition must be dismissed for the following reasons: (a) lack of jurisdiction, in that the acceptance of rent for the second half of March 1987 vitiated the notice of termination; (b) waiver, by creation of a landlord-tenant relationship shortly after Ms. Cohen’s death; and (c) waiver by creating, or affirming the previous creation of, a landlord-tenant relationship in February 1987.
The dismissal is without prejudice as to item "(a)”, and with prejudice as to the other two items.