Filed 6/17/16  Bui v. Stratton CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SANG BUI et al., | H039544 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV154399) |
| v. | |
| VASSILY STRATTON et al., | |
| Defendants and Respondents. | |

## I. INTRODUCTION

In 2004, plaintiff Sang Bui (Tenant) agreed in writing to lease retail premises in a San Jose shopping center for five years from defendant Stratton Properties (Landlord). Under previous leases between Tenant and Landlord, Tenant had operated a store called Khai Hoan Souvenirs on the premises and the 2004 lease contemplated he would continue to do so.  The lease generally prohibited Tenant from assigning or subletting all or any part of his interest without Landlord's prior written consent, but a "Tenant Affiliate" clause allowed Tenant to assign or sublet his interest to a corporation he controlled without Landlord's consent so long as the corporation assumed Tenant's lease obligations and Tenant provided Landlord with written notice of the assumption and assignment.

In 2005, Khai Hoan, Inc. (Corporation) was formed to operate the business. According to Tenant, Landlord accepted rent checks from Corporation and was on notice that Corporation was operating the business.  A fire in 2009 made the premises

temporarily unusable. When the premises were repaired, Landlord rented them to third parties (the Vu defendants) before the end of the lease term despite the expressed interest of Tenant and Corporation in renewing the lease.

Tenant and Corporation filed a complaint stating various claims against Landlord and the Vu defendants. The only issue presented by this appeal is whether Corporation stated a cause of action for wrongful eviction against Landlord. Corporation alleged that it peaceably obtained actual possession of the premises without complying with the Tenant Affiliate clause. The trial court sustained Landlord's general demurrer without leave to amend. We will affirm this ruling after concluding that Corporation is unable to allege facts demonstrating that it had a right to possess the premises that is prerequisite to a wrongful eviction claim.

## II. THE COMPLAINT AND DEMURRER

According to the sixth amended complaint, Landlord and Tenant signed a written five-year lease for retail premises. This 2004 lease was the latest of several leases the parties had entered since Tenant began operating a store named Khai Hoan Souvenirs selling gifts, souvenirs, and health and diet supplements. The lease included a three-year option to renew.

The 26-page lease, attached to the complaint and incorporated by reference, includes two pages governing the assignment or subletting of the premises. "Landlord covenants and agrees with Tenant that upon Tenant paying rent and other monetary sums due under this Lease, performing Tenant's covenants and conditions under this Lease and upon recognizing Landlord as purchaser of the Complex, Tenant shall and may peaceably and quietly have, hold and enjoy the Premises for the Lease Term, subject, however, to the terms of the Lease and of any other leases, mortgages or deeds of trust relating to the Complex, as may be set forth in this Lease." (Paragraph 19.18.) The lease "may be modified or altered only by an agreement in writing between Landlord and Tenant, and

2

no act or omission of any employee or agent of Landlord shall alter, change, or modify any of the provisions hereof." (Paragraph 21.11.)

The lease precluded Tenant from transferring, assigning, or subletting "all or any part of [Tenant's] interest in the Lease or in the Premises, without [Landlord's] prior written consent, which [Landlord] shall not unreasonably withhold." (Paragraph 6.5.1.) A Tenant Affiliate clause (Paragraph 6.5.2) provided an exception to the assignment restrictions.

"Notwithstanding the provisions of Paragraph 6.5.1 hereof, Tenant may assign or sublet the Premises, or any portion thereof, without Landlord's consent, to any corporation which controls, is controlled by or is under common control with Tenant, or to any corporation resulting from the merger or consolidation with Tenant, or to any person or entity which acquires all the assets of Tenant as a going concern of the business·that is being conducted on the Premises, all of which are referred to as "Tenant Affiliate"; provided that before such assignment shall be effective, (a) said assignee shall assume, in full, the obligations of Tenant under this Lease and (b) Landlord shall be given written notice of such assignment and assumption. Any such assignment shall not, in any way, affect or limit the liability of Tenant under the terms of this Lease even if after such assignment or subletting the terms of this Lease are materially changed or altered without the consent of Tenant, the consent of whom shall not be necessary." The "Landlord may accept rent from any person other than Tenant pending approval or disapproval of such assignment." (Paragraph 6.5.3(b).)

After Corporation was formed in 2005, Landlord accepted rent checks from Corporation and was on notice that the business was being operated by Corporation. "At all relevant times, [Corporation] was in actual possession of the Premises, peaceably obtained." Landlord did not object to Corporation's possession of the premises or operation of the business.

In March 2009, the last year of the lease, the premises were damaged by a fire and rendered unusable. The lease provides for what may occur if the premises are damaged partially or substantially by a fire. Substantial damage is defined as "damage that cannot reasonably be expected to be totally repaired within one hundred twenty (120) days from the time work commences." (Paragraph 15.2.) Paragraph 15.1 states in part:

"In the event that the Premises are substantially damaged by fire or other insured casualty within the last Lease year, Landlord shall have the right to terminate this Lease by providing Tenant with written notice of termination within ninety (90) days after the casualty occurs. In the event that substantial damage to the Premises occurs within the last six months of this Lease Term, and Landlord has not, within sixty (60) days of the occurrence of the casualty, commenced repairs and rebuilding, Tenant may terminate this lease by providing Landlord with written notice of termination within sixty (60) days after the casualty occurs."

While out of the premises, Tenant and Corporation informed Landlord that "once the damage was repaired," they "would move back into the Premises and continue to operate under the Lease, including without limitation, the Option Period." Tenant and Corporation "maintained possession of the Premises by keeping various items of personal property on-site." In March 2009, Landlord proposed a new lease to Tenant and Corporation consistent with Landlord's practice to enter a new lease with existing tenants instead of allowing a renewal option to be exercised. In apparent anticipation of the September 30, 2009 end of Tenant's five-year lease term, Landlord leased the premises in June 2009 to the Vu defendants "before the lease was terminated, and before the proposed new lease was discussed."[1] The Vu defendants had been operating a competing

_____

[1] The record on appeal does not provide further details about the timing or circumstances of Landlord's entry into a lease with the Vu defendants.

4

business in the same shopping center, and have operated the business on the premises since August 2009.

The second cause of action alleged that Landlord wrongfully and tortiously evicted Tenant and Corporation from the premises by entering forcibly, changing the locks, and delivering the premises to the Vu defendants in violation of the implied covenant of quiet enjoyment of the premises causing Tenant and Corporation to suffer emotional distress and loss of income. The sixth cause of action sought declaratory relief against all defendants. Other causes of action are not relevant to this appeal.[2]

The trial court sustained Landlord's demurrer to the second cause of action without leave to amend. According to its written order, the court concluded that Corporation is not a tenant, nor an assignee, nor a third-party beneficiary of the lease and otherwise "fails to adequate[ly] allege property rights and privileges … ," and that operation of a business on the premises and payment of rent did not create property rights in Corporation.

## III. ANALYSIS

### A. STANDARD OF REVIEW

*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949 (*B & P Development Corp.*) summarized how to review a ruling on a demurrer. "A general demurrer presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts to justify any relief, notwithstanding superfluous allegations or claims for unjustified relief. [Citations.]

---

[2] Tenant alleged in the first cause of action that Landlord breached the lease by failing to enforce covenants prohibiting the Vu defendants from competing with him and by delivering possession of the premises to them. The remaining causes of action are against the Vu defendants for interfering with contractual relations (third), interfering with prospective economic advantage (fourth), and unfairly competing with Tenant and Corporation (fifth).

5

'[The] allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452.)' [Citation.] Pleading defects which do not affect substantial rights of the parties should be disregarded. (Code Civ. Proc., § 475; [citation].) [¶] "In evaluating a demurrer, we assume the truth of all material facts properly pleaded in the complaint unless they are contradicted by facts judicially noticed (Code Civ. Proc., § 430.30, subd. (a), 430.70; [citation]) but no such credit is given to pleaded contentions or legal conclusions. [Citations.] Specific factual allegations modify and limit inconsistent general statements. [Citations.] In particular, a general description of an exhibit attached to a complaint will be disregarded where inconsistent with the exhibit. [Citations.]" (*B & P Development Corp.*, at pp. 952–953.)

## B. CORPORATION'S STANDING TO MAINTAIN AN ACTION FOR WRONGFUL EVICTION

The question presented by this appeal is whether the complaint includes any facts supporting the legal conclusion that Corporation "was in actual possession of the Premises, peaceably obtained." We are not required to accept the complaint's allegation of this legal conclusion, particularly when it is contradicted by more specific factual allegations.

California statutes protect a party in possession of real property against another party, even the owner, from entering the property forcibly or entering peaceably and then turning out the party in possession by force (Code Civ. Proc., § 1159)[3] or retaining possession by force (§ 1160). One element of a statutory claim is that the plaintiff "was peaceably in actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer." (§ 1172.) These statutes are intended to

---

[3] Unspecified section references are to the Code of Civil Procedure.

preclude a landlord from regaining possession of realty by self-help. "Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not be disturbed except by legal process." (*Jordan v. Talbot* (1961) 55 Cal.2d 597, 605.)

"[A]part from any remedy available in a summary action of forcible entry and detainer (Code Civ. Proc. § 1159 et seq.)," the California Supreme Court has held that "a person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor and that the forcibly entering defendant's title or right of possession is no defense to such action." (*Daluiso v. Boone* (1969) 71 Cal.2d 484, 486 (*Daluiso*).) A person who is "peaceably in actual possession of the land" is entitled to bring a tort action for forcible entry. (*Id.* at p. 501.)

Before *Daluiso*, California case law was said to recognize the tort of wrongful eviction described in section 822 of the First Restatement of Torts published in 1939. (*Barkett v. Brucato* (1953) 122 Cal.App.2d 264, 274–275 (*Barkett*).)[4] *Barkett* quoted section 822: " 'The actor is liable in an action for damages for a nontrespassory invasion of another's interest in the private use and enjoyment of land if, [¶] (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and [¶] (b) the invasion is substantial; and [¶] (c) the actor's conduct is a legal cause of the invasion; and [¶] (d) the invasion is either [¶] (i) intentional and unreasonable; or [¶]

---

[4] *Barkett* was an action by residential tenants against their landlord. (*Barkett*, *supra*, 122 Cal.App.2d at p. 266.) The parties rely on *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873 (*Ginsberg*), which quoted and analyzed *Barkett* at length in distinguishing it from the commercial context. (*Id.* at pp. 899–901.) *Ginsberg* concluded that breach of the implied covenant of quiet enjoyment in the commercial lease involved in that case sounded in contract, not tort, and did not support an award of punitive damages. (*Id.* at pp. 895–904.)

(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultra-hazardous conduct.'" (*Ibid.*)

An element of the wrongful eviction cause of action is the plaintiff's right to use and enjoy the property. A person with no right to possess realty cannot maintain an action for wrongful eviction from that property. (*Upton v. Toth* (1940) 36 Cal.App.2d 679, 686–687.) We must therefore determine whether any facts establish that Corporation had acquired some right to possess the leased premises.

A person's occupation of real property with the owner's consent may create a tenancy and an obligation to pay rent by operation of law without a formal lease. The rent obligation is incidental to "the relationship of landlord and tenant." (*Ellingson v. Walsh, O'Connor & Barneson* (1940) 15 Cal.2d 673, 675.) "Where there is a lease the liability of the tenant arising by operation of law is not superseded by the contractual obligation. Both liabilities exist simultaneously. The lease has a dual character; it is a conveyance of an estate for years, and a contract between lessor and lessee. The result is that dual obligations arise, -- contractual obligations from the terms of the lease, and obligations under the law from the creation of the tenancy. As it is sometimes expressed, there are dual obligations arising from 'privity of contract' and 'privity of estate.'" (*Ibid.*)

According to the complaint, Corporation began occupying the premises pursuant to a written lease to Tenant. In that lease, Landlord expressly covenanted that Tenant would have quiet enjoyment of the premises during the term of the lease so long as Tenant paid the rent. (Cf. *Guntert v. City of Stockton* (1976) 55 Cal.App.3d 131, 138 [covenant of quiet enjoyment is implicit in every lease] (*Guntert*).) Corporation was not named in the 2004 lease as it was not formed until 2005. Corporation has not alleged that

8

it became a lessee by any written lease amendment nor that it became an assignee or sublessee[5] of Tenant's interest pursuant to the terms of the lease.

There are specific lease provisions in the Tenant Affiliate clause for a corporation to assume Tenant's lease obligations without Landlord's approval so long as Landlord was notified that Tenant had assigned his interest and the corporation had assumed his lease obligation. However, there is no allegation that Tenant and Corporation complied with these formalities to make Corporation a Tenant Affiliate with a right to possess the premises. Indeed, there is no allegation that Corporation could qualify under the lease description of a Tenant Affiliate as a "corporation which controls, is controlled by or is under common control with Tenant, or to any corporation resulting from the merger or consolidation with Tenant … ." (Paragraph 6.5.2.) There is no allegation of Tenant's role, if any, in the formation or operation of Corporation.

Corporation's brief cites four cases for the proposition that a "plaintiff does not need to be a signatory to the lease in order to bring a claim against the landlord." However, Corporation recognizes each is factually distinguishable.

Two cases did not involve a claim of wrongful eviction. In *Guntert*, *supra*, 55 Cal.App.3d 131, the individual lessee and two wholly owned corporations claimed that the lessor's notice of termination of the lease was invalid and had damaged their businesses. (*Id.* at pp. 137–138.) The city/lessor argued that they could not claim constructive eviction without leaving the premises. The appellate court observed,

---

[5] "The difference between an assignment and a sublease is that an assignment transfers the lessee's entire interest in the property whereas a sublease transfers only a portion of that interest, with the original lessee retaining a right of reentry at some point during the unexpired term of the lease." (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 492, fn. 2.)

"Guntert is not suing for a wrongful, constructive eviction but for the lessor's unjustified and unauthorized interference with his profitable use of the leased property. The rule requiring ouster or surrender prior to suit for wrongful eviction does not preclude the tenant from his election to stand upon the lease, remain in possession and sue for breach of contract damages." (*Id.* at p. 141.)

*Guntert* is relevant in that it involved third-party beneficiaries of a lease of property used for heavy steel construction. (*Guntert*, *supra*, 55 Cal.App.3d at pp. 138–139.) Although the "individual was the sole lessee, he conducted his business through two corporations" of which he was the sole stockholder. (*Id.* at p. 141.) The appellate court upheld an award of profits lost by the corporation named "Construction Division," reasoning: "Although the lease created a single tenancy, Construction Division was one of the beneficiaries. The lease expressly named both corporations as occupants of the premises; collectively, the occupants could recover damages suffered by Construction Division by showing that it was an entity for whose benefit the contract was made." (*Ibid.*) There was evidence that Construction Division had been performing heavy equipment and boat building operations on the property for twenty years, "the group of plaintiffs were the intended and acknowledged tenants of the leased land," and "Construction Division's continued conduct of this business was contemplated by the parties as the purpose of the 1966 lease." (*Id.* at pp. 141–142.)

*Cordonier v. Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991 also did not involve a wrongful eviction claim. In that case a restaurant franchisor and franchisee sued the lessor for breach of a written lease of space in a shopping center. Part of the master lease provided that the lessor would enter 20-year leases with certain types of anchor tenants, namely a department store, a supermarket, and a drugstore. (*Id.* at pp. 995–996.) The lessor entered the leases, but the department store and drug store vacated the premises within five years, allegedly damaging the restaurant's profits. (*Id.* at p. 996.) The appellate court briefly discussed whether the franchisee was a proper

10

party.  (*Id.* at p. 1004.)  The court noted that the master lease contemplated a sublease or assignment by the franchisor for operation of a restaurant and that the franchisee had agreed in writing to be bound by the master lease.  (*Ibid.*)  While there was no allegation of assignment or sublease, the franchisee appears to have been at the least an intended beneficiary of the master lease.

The other two cases on which Corporation relies did involve claims of wrongful eviction, but are nonetheless distinguishable.  *Pierce v. Nash* (1954) 126 Cal.App.2d 606 involved a successful action for constructive eviction *by the assignee* of a commercial lease.  (*Id.* at pp. 609–610, 619.)  Here, as we have discussed, Corporation is not an assignee, sublessee, or tenant affiliate under the lease.

This court's decision in *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004 (*Spinks*) explored both contract and tort duties owed by a landlord to an occupant of a residential apartment in an appeal from an order granting summary judgment.  The occupant did not enter a lease with the landlord.  Instead, the occupant's employer entered a lease with the landlord providing for the employee's housing during her work assignment.  (*Id.* at p. 1016.)  During an extension of her work assignment, the employee was injured on the job and stopped working, after which the employer notified her and the landlord it would no longer be paying rent.  As requested by the employer, the landlord changed the locks on the apartment and removed the furniture.  (*Id.* at pp. 1017–1018.)

As to the occupant's contractual claims, *Spinks* found triable issues in whether the employee was an intended third party beneficiary of the lease between the landlord and her employer (*Spinks*, *supra*, 171 Cal.App.4th at p. 1030), and whether she herself could be considered a tenant who was protected by the covenant of quiet enjoyment.  While she did not pay rent to the landlord, her employer paid the rent on her behalf as part of her compensation.  (*Id.* at pp. 1035–1036.)

The occupant also asserted statutory and tort forcible entry and detainer claims. There also we found triable whether the employee was a licensee or a tenant with a right of possession. (*Spinks*, *supra*, 171 Cal.App.4th at p. 1040.)

"One key characteristic that distinguishes a tenancy from a mere license is the right to exclusive possession as against the whole world, including the landowner. [Citations.] Here, plaintiff made the factual assertion that the 'lease agreement did not place any restrictions upon Plaintiff's occupancy at the Subject property.' Defendants responded that the proffered fact was irrelevant, but they did not dispute it. In any event, there is no evidence in the record indicating that any person besides plaintiff had the right to occupy the apartment during the lease term. To the contrary, the housing agreement provides for plaintiff to 'be housed individually' in the apartment. Thus, so far as this record suggests, plaintiff enjoyed exclusive possession of the premises during the term of the lease." (*Spinks*, *supra*, 171 Cal.App.4th at p. 1040.)

In the trial court, Corporation argued in opposition to the demurrer that even if it was not an intended beneficiary of the lease, it could still bring a claim for wrongful eviction. "A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee." (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400.) "A person is a donee beneficiary only if the promisee's contractual intent is either to make a gift to him or to confer on him a right against the promisor." (*Id.* at pp. 400–401.) Considering that Corporation was not formed until a year after the lease was executed by Tenant, we conclude that Corporation was neither a creditor beneficiary or a donee beneficiary. Any benefit of the lease enjoyed by Corporation appears to be merely incidental.

In the trial court, Corporation argued that *Spinks* establishes that "a plaintiff need not be tenant, or even an intended beneficiary of the lease, to bring a claim for wrongful eviction," so long as the plaintiff had peaceable possession of the property. To the contrary, *Spinks* did not hold that a mere licensee or guest could state a wrongful eviction

12

claim.  There was a triable issue about the wrongful eviction cause of action because there was a triable issue whether the occupant qualified as a tenant with exclusive possession of the premises.

Had Corporation moved into vacated premises and had Landlord accepted rent payments from Corporation, those circumstances might support a conclusion that some form of tenancy had been created giving Corporation a right to possess the premises.  "A tenancy may be created by consent and acceptance of rent, despite the absence of a lease." (*Cobb v. San Francisco Residential Rent Stabilization and Arbitration Bd.* (2002) 98 Cal.App.4th 345, 352.)  However, Corporation claims to have obtained peaceable possession of the premises while they were already occupied and possessed by Tenant pursuant to a written lease.  Corporation's payment of the rent makes it more like an agent or employee of Tenant than a tenant, sublessee, or assignee.

Other jurisdictions have considered similar issues and concluded that it takes more than a landlord accepting rent payments from an apparent agent of a tenant, even checks on the agent's account, to make the agent a tenant with independent possessory rights.  In *Garbutt & Donovan v. Barksdale-Pruitt Junk Co.*(Ga. Ct. App. 1927) 139 S.E. 357, an individual who signed a lease later claimed that the landlord had accepted a partnership to which the individual belonged as a substitute tenant or subtenant because the landlord had accepted rent checks from the partnership.  The appellate court concluded that the partnership did not become a tenant or subtenant unless it clearly appeared "that it was the intention of the landlord to accept the payments as made by the subtenant on his own behalf as the owner's tenant, instead of through him for and on behalf of the original tenant." (*Id.* at p. 358; *Lake Union Realty Co. v. Woolfield* (Wash. 1922) 205 P. 14, 15 [when landlord accepted rent checks on business manager's personal account as proceeds of business and rent from lessee, manager was not recognized as a tenant under the lease]; see *N. Y. City Housing Authority v. Padmore* (N.Y. Civ. Ct. 1988) 531 N.Y.S.2d 873, 874 [caregiver who was employed by and resided with tenant did not

herself become a tenant by virtue of landlord accepting her personal checks for rent while both caregiver and employer lived in apartment].)

The allegations of the complaint do not suggest that Corporation had possessory rights independent of Tenant's rights under the lease. When a lessor has consented in a written lease to a lessee's possession of commercial premises and the lease provides several methods for the lessee to transfer his rights and obligations under the lease to an assignee, sublessee, or subtenant, with special provisions for assigning his interest to certain types of corporations, a corporation cannot acquire the lessee's rights while the lessee continues to occupy the premises by a method different than contemplated in the lease. Tenant and Landlord were free to modify the lease in writing, but Corporation has not alleged that this occurred.

Though Corporation did not exist when the 2004 lease was executed, Paragraph 6.5.2 of the lease contemplated circumstances in which Tenant could incorporate and assign his lease interest to a corporation related to him without Landlord's consent, so long as Landlord received written notice that Tenant had so assigned his interest and that the corporation had assumed his lease obligations. We reject the notion that Corporation somehow acquired some of Tenant's right to possess the leased premises by any means other than those specified in the Tenant Affiliate clause of the lease.[6] Corporation has not alleged compliance with that lease provision and has therefore not alleged possessory rights sufficient to state a wrongful eviction claim.

---

[6] Unlike the trial court, we do not rely on any inconsistency in the allegations that the plaintiffs were in peaceable possession though they had to temporarily vacate due to fire damage. So long as a party is entitled to possession of realty, forcible detainer of the premises by another party is actionable. (Cf. *White v. Pfieffer* (1913) 165 Cal. 740, 742.)

14

## C. LEAVE TO AMEND

Corporation's failure to ask the trial court for leave to amend did not forfeit the issue on appeal. (§ 472c, subd. (a).) As this court stated in *B & P Development Corp.*, *supra*, 185 Cal.App.3d 949, 962: "Our ultimate concern is: 'If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend.' [Citations.] 'In the final analysis, the court is required to look at the existing pleading and hazard its best judgment whether behind the words of the pleading anything of legal substance lies, whether on further revision the pleading can honestly state a cause of action.' [Citation.] 'When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made ... .' (Code Civ. Proc., § 472c.) Where it does not appear any amendment could create a cause of action, leave to amend need not be granted. [Citations.]"

On appeal, Corporation asserts that it can allege facts that tenant "assigned its rights and interest under the Lease when he formed [Corporation] to operate the existing Khai Hoan Souvenirs business." This proposed allegation by itself would not cure the pleading defect we have identified. The lease required certain formalities in Tenant assigning his lease interest to a corporation related to him, namely the corporation's assumption of his lease obligations and written notice to Landlord of the assignment and assumption. As Tenant claims to have formed Corporation to operate his business, Tenant and Corporation should be well aware of their documented rights and obligations. If Corporation in fact assumed Tenant's obligations under the lease and Tenant executed an assignment of his rights and obligations to Corporation and so notified Landlord in writing of this assumption and assignment, these facts should have been alleged already. We find no abuse of discretion by the trial court in sustaining the demurrer without leave to amend.

15

## IV. DISPOSITION

The order sustaining the demurrer without leave to amend is affirmed.

 

 

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Márquez, J.